[No. 1266.   Decided December 26, 1894.]

THE STATE OF WASHINGTON, *on the Relation of L. C. Whitney, Prosecuting Attorney, Appellant,* v. Q. E. FRIARS ET AL., *Respondents.*

COUNTY COMMISSIONERS—MISCONDUCT IN OFFICE—REMOVAL—SUFFICIENCY OF INFORMATION.

The refusal of county commissioners to grant more than two liquor licenses in certain unincorporated towns will not subject them to removal on the ground of collusion with others to monopolize the liquor business in said town for the purpose of defrauding the county, when the statute gives the commissioners the sole and exclusive authority to regulate, restrain, license and prohibit the sale of intoxicating liquors outside the corporate limits of cities and towns.

The appointment by county commissioners of a purchasing agent for the county, while not a power expressly granted them, is one necessary to the proper exercise of the powers granted, and is therefore legal.

In an information in the nature of *quo warranto* to remove certain county commissioners from office, it was alleged that "defendants, in their official capacity, colluded and conspired together, during the year 1893, at the beginning of their term of office, to cheat and defraud said county, by auditing and allowing themselves compensation in the way of per diem and mileage, and in pursuance of said collusion and conspiracy, willfully and corruptly continued the sessions of said board of county commissioners at divers times during said year from time to time and day to day, and were wrongfully and

illegally in session for the purposes aforesaid the total number of eighty-two days, for which time, so wrongfully in session, the defendants willfully and corruptly audited and allowed themselves per diem." *Held*, too general and indefinite in its allegations to show any illegality in the acts of the commissioners.

The allowance of per diem and mileage to county commissioners of which there is no record in the minutes of their proceedings cannot be urged against them as a malfeasance in office, as the law makes it the business of the auditor as clerk of the board to record such bills, and there can be no presumption that the county commissioners are responsible for the failure of the auditor to perform a clerical duty.

The county commissioners having the power under the law to contract for the building of bridges, a mistake of judgment in entering into a contract therefor would not subject them to an information seeking to deprive them of their office.

An information for the purpose of ousting an officer from office for alleged malfeasance in the performance of official duties must state the facts upon which the action is based as definitely as they are required to be alleged in an information in a criminal action.

*Appeal from Superior Court, Snohomish County.*

*L. C. Whitney* (*John W. Miller* and *John W. Frame*, of counsel), for appellant.

*A. D. Austin, A. K. Delaney* and *Louis K. Church*, for respondents.

Irregular and improper conduct on the part of the county commissioners cannot be made out by inference, but such, if it exists, must be directly alleged and proved. *Windham v. Litchfield*, 22 Conn. 226. The courts always presume that an officer properly performs his duties and acts according to law. *Dubuc v. Voss*, 92 Am. Dec. 526; *Culbertson v. Milhollin*, 85 Am. Dec. 428; *Commonwealth v. Slifer*, 64 Am. Dec. 680. Where an officer's acts are authorized, or warranted by law, his motives cannot be inquired into, whether he acts with malice or not. *Moran v. McClearns*, 41 How. Pr. 289; *Pike v. Megoun* 44 Mo. 491. Courts never presume fraud or malversation on the part of a public officer. *Portis v. Hill*, 98 Am. Dec. 481. And, unless acts necessarily import fraud, it is never presumed. *Gregg v. Sayre*, 8 Pet. 244. Where fraud or conspiracy is charged, the facts constituting the same must be set out. Kerr, Frauds, 365; *Keller v. Johnson*, 71 Am. Dec. 356.

There is no principle of law better settled than that a grant of power conveys with the grant all the powers necessary to the proper execution of the power granted. *McCulloch v. Maryland*, 4 Wheat. 406; *Anderson v. Dunn*, 6 Wheat. 204; *Portland v. Schmidt*, 13 Or. 17.

The information fails to state what part of the allowance of compensation to the commissioners was wrongful and what was a proper charge against the county. 2 Beach, Pub. Corp., § 862; *State v. Corning*, 44 Kan. 442 (24 Pac. 966); *Burroughs v. Commissioners*, 29 Kan. 196.

The opinion of the court was delivered by

DUNBAR, C. J.—This action was brought under ch. 10, § 679 *et seq.*, of the Code of Procedure, on an information filed by the prosecuting attorney of Snohomish county, against the respondents who constituted the board of county commissioners of said county, to remove them from office for malfeasance, misfeasance, corruption and misdemeanor in office, done and committed in their official capacity as such board of county commissioners, on five specific charges set out in the information. The respondent interposed a general demurrer to the information, which was sustained by the court, and the action was dismissed. From the action of the court in sustaining the demurrer and dismissing the information, the appellant appeals to this court.

Without investigating many of the questions which are presented in this case, we are satisfied that the demurrer was rightly sustained on the ground that the information did not state facts sufficient to constitute a cause of action. The first charge is that the commissioners colluded together with persons unknown to the relator, to corner and monopolize the business of the retail sale of intoxicating liquors at the towns of Monte Cristo and Silverton, for the purpose of cheating and defrauding said county of Snohomish, by entering upon the journal record of their proceedings the following resolution:

"Whereas, it having been shown to the board of county commissioners of Snohomish county that application for the sale of intoxicating liquors in the towns of Monte Cristo and Silverton in Snohomish county, State of Washington, will

soon be made by various persons, and it further appearing to the said board that said towns take the character of mining towns, and this board believes that said towns will have residing therein a great number of persons of objectionable and questionable character, and that said persons will live with the intention and for the purpose of committing depredations against the peaceable inhabitants thereof, and that in granting license to sell intoxicating liquors therein it will be necessary for this board of county commissioners to see that no person is granted a license for the sale of intoxicating liquors who is not a man of good character and a person who will carry on the business in as respectable manner as it can be carried on, and a person who will be responsible to the law. Therefore, it is considered and ordered by the board of county commissioners of Snohomish county that not more than two different licenses for the sale of intoxicating liquors in each of said towns be granted."

And the order proceeds to the effect that the treasurer is commanded not to receive any moneys for licenses to be issued in said towns except for the number of saloons above stated, and then only from such persons as the board of county commissioners shall direct him to receive from; and that the order shall remain in effect for six months, or until the same is ordered by the board to be null and void. The information sets up the fact that after such order was promulgated by the board, various persons applied for a license to sell liquor in the towns aforesaid, and were refused such license.

This action of the board, in view of the statute which provides that the county commissioners shall have the sole and exclusive authority to regulate, restrain, license and prohibit the sale and disposition of spirituous, fermented, malt or other intoxicating liquors outside of the corporate limits of each incorporated city, could not certainly be construed to be an action which would subject them to an information such as was filed in this case. It may have been an error of judgment on the part of the board, and, if so, any person who felt himself aggrieved by such action or decision of the board would have a right to appeal from such action and decision and obtain redress in that manner. But it is cer-

tainly not the policy of the law, nor is it the intention of the law, that a county commissioner shall be subject to the necessity of defending his right to his office whenever it may occur to any citizen that he has committed an error in any ruling or decision which he may render in performing the duties of his office.

The second charge, viz., that the defendants conspired with the auditor to purchase supplies for the county, equally fails, it seems to us, to state a cause of action. The county commissioners are constituted by the law the guardians of the county and its business managers, and while the power to appoint an agent is not expressly granted, the power which they do have under the law necessarily carries with it all the powers necessary to the proper exercise of the power granted.

The third allegation is that "defendants, in their official capacity, colluded and conspired together, during the year 1893, at the beginning of their term of office, to cheat and defraud said county, by auditing and allowing themselves compensation in the way of per diem and mileage, and in pursuance of said collusion and conspiracy, wilfully and corruptly continued the sessions of said board of county commissioners at divers times during said year from time to time and day to day, and were wrongfully and illegally in session for the purposes aforesaid the total number of eighty-two days, for which time, so wrongfully in session, the defendants wilfully and corruptly audited and allowed themselves per diem," etc. This count is bad for indefiniteness, if there were no other objections to it. There is no statement here at what terms of court, or at what time, these alleged illegal sessions were held. It is not alleged what the number of days is that were necessary for the commissioners to transact the business of the county in ; so that the commissioners in answering this charge would have to go into a computation to determine the particular days on which they were charged with illegally sitting; if it could be determined at all from the allegations of the information, which we think is doubtful.

The fourth count in the information charges the defendants with the wrongful allowance of compensation and mileage to themselves ; alleges that during the year 1893 defendants, as county commissioners of said county, wilfully and corruptly colluded and conspired together to cheat and defraud said county, and in pursuance of said collusion and conspiracy, at divers times, wilfully and corruptly colluded with the auditor of said county, and had and procured said auditor to issue and deliver to each of defendants warrants upon the county treasurer for large sums of money, for which there is no allowance on record upon the minutes of their proceedings as county commissioners, and which seem never to have been audited and allowed by said board. The law makes it the business of the auditor to record such bills and there can be no presumption that the county commissioners are responsible for the failure of the auditor to perform a clerical duty.

The fifth allegation, that defendants entered into collusion to defraud the county by making a contract with one Palmer for the building and construction of certain bridges in said county, is equally faulty with the others. There is no statement concerning the particular fault or deficiency in the contract, and as the county commissioners have the power to contract for the building of bridges under the law, a mistake of judgment would not subject them to an information seeking to deprive them of their office. If the county commissioners illegally awarded this contract, any tax payer could take an appeal from such action.

Besides, there is not in any of these counts any definite, distinct charge. The general allegations that the county commissioners ''fraudulently and collusively conspired,'' etc., are simply conclusions of law, and are not statements of facts, which are required under the statute providing for the filing of informations. These actions are in the nature of criminal actions. A penalty is imposed, viz., the loss of the office ; and when officers are called upon to defend an action which involves the loss of their office for alleged malfeasance in the performance of their official

23–10W

duties, law and common justice require that the facts shall be stated as definitely as they are stated in an indictment or information in a criminal action.

We think the demurrer was rightly sustained, and the judgment will be affirmed.

Scott, Hoyt and Stiles, JJ., concur.