[No. 15153.   Department Two.   March 4, 1919.]

SPOKANE, PORTLAND & SEATTLE RAILWAY COMPANY
et al., *Respondents*, v. FRANKLIN
COUNTY, *Appellant*.[1]

STATUTES (75)—CODES—CONSTRUCTION.  A compiler's codification
of several independent acts, without official sanction, does not con-
trol construction, and any superseded matter must be disregarded
and omitted matter searched out and given effect.

HIGHWAYS (29, 30)—ROAD DISTRICTS—POWERS OF COUNTY BOARDS
—STATUTES—DIVIDE.  The board of county commissioners may make
the whole county outside of cities one road district, under Laws
1903, p. 223, § 7, making it mandatory to "divide" the county into
not exceeding four districts, "divide" being used in the sense of cre-
ate, in the absence of any minimum limit; as the act superseded any
limitation by prior statutes making· each county commissioner a
commissioner of roads in his own district.

HIGHWAYS (37)—FINANCES—BUDGET ESTIMATES—STATUTES — AP-
PROPRIATION OF TAX.  Under the budget act, Rem. & Bal. Code, § 9208,
requiring itemized estimates of the amounts required to meet public
expenses for the ensuing year to be raised by taxation, a budget for
county roads is sufficient where it names specific sums intended to
be expended upon particular roads, although the sum total was later ·
reduced to keep within the statutory limit, without reducing any
particular item.

TAXATION (230)—DISPOSITION OF TAXES COLLECTED—MISAPPROPRIA-
TION.  The diversion of funds levied for county roads under the
budget system to other roads not included in the estimates does not
avoid the tax.

SAME (91)—LEVY AND ASSESSMENT—REDUCTION—LUMP SUM.  A
lump sum reduction of the total tax levied for county roads, is
equivalent to a reduction *pro tanto* on each individual item in the
budget and does not avoid the tax.

Appeal from a judgment of the superior court for ·
Franklin county, Truax, J., entered August 23, 1918,
upon findings in favor of the plaintiffs, in consolidated
actions to set aside a tax levy.  Reversed.

[1]Reported in 179 Pac. 113.

*M. L. Driscoll* and *Chas. W. Johnson,* for appellant.

*Geo. T. Reid, J. W. Quick, L. B. da Ponte,* and *C. A. Murray,* for respondents.

FULLERTON, J.—On February 4, 1915, the board of county commissioners of Franklin county, by resolution, duly passed and entered upon its records, abolished all of the road districts then existing in the county, and ordered:

"That the whole of Franklin county, except the territory embraced within the corporate limits of the Cities of Pasco, Connell and Kahlotus, be and is hereby constituted one road district to be designated and known as 'Road District No. 1,' and that there shall not be more than one road district in Franklin county."

Under this order, road taxes were levied and collected in the county for the years 1916 and 1917. At the appropriate time for making the levy for 1918, the county commissioners prepared and published the estimated annual budget of county expenditures, pursuant to §§ 9208-9212 of Remington & Ballinger's Code (Laws of 1909, p. 531). In the budget, under the general title, "Road District No. 1 Fund," and the subtitles "General Roads" and "General Maintenance," various county roads were designated by name or description, each name or description being followed by a stated sum. The form under the second subhead being the following:

"Pasco-Kahlotus ....................$ 6,000.00
"Gertler Road (Smith Canyon to Connell) ............................  2,000.00

.   .   .   .

"Hoon Road Bridges, etc............  1,200.00
"New Roads, Changes...............  5,000.00
"Various Roads not enumerated....... 15,000.00."

The sum total estimated under the first subhead was $54,400 and under the second $43,000, the whole aggregating $97,400. At the hearing on the budget, it was found that the total estimated sums for road purposes exceeded the sum that could be lawfully levied by taxation under the statutory limitations on the taxing power, and the county commissioners at that time, to meet the exigencies of the case, reduced the estimate to $87,400. In doing so, no reduction was made on any particular item contained in the estimated budget, the deduction being merely the taking of a fixed sum from the sum total. As thus corrected, the budget was adopted by the county commissioners and a levy directed upon all of the taxable property of the district sufficient to raise the required sum, the levy calling for a tax of 8.5 mills on the dollar of the assessable property.

The Northern Pacific Railway Company owns and operates a line of railroad extending, approximately speaking, from the southwest corner of the county in a northeasterly direction to the northeast corner thereof, and also a branch line extending from Connell, on its main line in a northerly direction to the county boundary. It also owns numerous segregated tracts of land in various parts of the county, aggregating a total area of 43,659.80 acres. The Spokane, Portland & Seattle Railway Company owns and operates a line of railway extending across the county on its southern boundary. These railways, and the acreage mentioned, are contained within, and form a part of, the taxable property of Road District No. 1, as created by the resolution of the county commissioners of February 4, 1915. The tax ordered levied was spread upon their properties, and conceiving themselves aggrieved thereby, they brought separate ac-

tions against the county to set aside the tax. After issue had been joined by the county, the actions were consolidated for trial, and upon trial resulted in judgments vacating and annulling the tax levy. The county appeals.

The allegations of the complaint of the railway companies suggest two principal reasons for avoiding the tax levy; first, that the order of the commissioners, creating one road district out of the entire county is *ultra vires* the powers of the county commissioners, and hence void; and, second, that the budget of contemplated expenditures for road purposes is so far a departure from the requirements of the statute relating to the formation of county budgets as to render any levy of taxes thereunder void. The trial judge adopted these views, and as we read his very able opinion filed in the cause, rested the judgment of the court upon them.

The boards of county commissioners of the several counties, with respect to the management of the county's business and funds, have, of course, only such powers as are conferred upon them by statute, and it is to these we must look when their acts in relation thereto are called in question. The statutes relating to dividing counties into road districts are codified by Mr. Remington in the chapter of his code entitled "Control and Management of County Roads," Rem. Code, §§ 5575-5589. By § 5575, the boards of the several counties are given general supervision over the roads in their respective counties, and it is made their duty to cause to be opened and kept in repair such roads as are necessary for the public convenience. For this purpose, they are given power to levy and collect taxes, direct its expenditure, appoint road supervisors and remove them for inefficiency,

neglect of duty, or malfeasance in office, and generally, to exercise all of the duties the statute confers with respect to county roads. The next section (§ 5576) provides that the board shall, as often as they deem it necessary, but not oftener than once each year, divide their respective counties, or any part thereof, into suitable and convenient road districts, not exceeding twenty-four in number, and cause a description thereof to be entered upon the county records, the only limitation on the power being that the district shall be of such size as to permit oversight and management by one road supervisor. The following section (§ 5577) provides that each county commissioner shall be *ex officio* road commissioner of the several road districts in his commissioner district, and shall see that all the orders of the board of county commissioners pertaining to roads in his district are properly executed. Under a proviso to the section, it is enacted that, when county commissioners are not elected by districts, it shall be the duty of the board, by proper order entered on its records, to divide such county into commissioners' districts to correspond with the number of the members of such board, and to assign to each member one of such districts, of which he shall then be road commissioner. The remaining sections of the chapter relate to the appointment of road supervisors, to their duties when so appointed, to the manner of letting the work for road improvements, and to the disposition of road district funds when a change is made in the number and form of the districts. The trial court construed these statutes as if they were concurrent in point of time and constituted a single enactment, and so construing them, held that each and every part of them must be given effect; and that, to give effect to each and all of the several pro-

visions, required the holding that the county commissioners were without power to divide the county into any less number of road districts than three, a number corresponding with the number of county commissioners.

It may be conceded, we think, that, if the trial court's premise is correct, its conclusion follows. But we think that the fundamental error into which the court fell was in assuming that the several sections cited are concurrent in point of time. A glance at the chapter alone will show that it is not composed of any single enactment of the legislature. On the contrary, it is a composite of several independent acts of the legislature, ranging from territorial days down to the session of the state legislature of 1907; it is, so to speak, the compiler's idea of what now remains as law of the many enactments of the legislature. But the compilation has no official sanction in the sense that it controls the construction the court must put upon the several acts. If it includes matter superseded, the matter must be rejected, and if there are matters not superseded and not contained therein, they must be searched out and given effect.

Passing to the specific question, we find that the section of the statute providing for the division of the county into districts was formerly a part of one section of the act of 1893, codified as § 5577. The provision was there in substantially its present form, other than it did not limit the number of road districts into which the county might be divided and did not include the limitation with reference to size. In 1903, the legislature, by a general independent act (Laws of 1903, p. 223), made it the mandatory duty of the several boards of county commissioners, at their regular session next preceding the date for the levy

of taxes for the year 1903, to divide their respective counties, exclusive of incorporated cities and towns, into not to exceed four road districts, and cause a description thereof to be entered upon their records. This act, while containing much of the matter then contained in the existing road laws, made no specific reference to them, and no general reference further than to repeal all acts and parts of acts in conflict therewith. It contained none of the provisions of the previous statute relating to appointment of county commissioners as *ex officio* road commissioners, or the division of the county into commissioners' districts where the county commissioners were not elected by districts, and it made road supervisors appointive, who were theretofore elective. The act was, as we say, a general or independent act, and its effect was to supersede all prior acts on the same subject with which it was in conflict. Being without restrictions on the matter of dividing the county into road districts, save as to the maximum number of districts, it vested in the county commissioners absolute discretion in that regard, and if the provisions of the prior statutes with reference to making each several county commissioner a commissioner of roads in his district was a limitation on the power of the board to fix the number of the road districts, that limitation was superseded by the act. In other words, the power of the board to divide the county into districts was thereafter restricted as to the maximum number into which the county might be divided, and not as to the minimum number. The existing section was enacted as an amendment to the provisions of 1903, and as it contained no reference to the other conditions of the earlier statute, it is evident that they were not revived thereby. Since, therefore, there is no limitation upon the minimum number of

road districts into which the county may be divided, save such as is found in the mandate to divide and the further mandate that the size and form of the districts shall be such as to permit personal oversight and management by one road supervisor, the minimum number must be within the discretion of the board of county commissioners.

It is true that the primary meaning of "divide" is to separate into parts, and it can be argued that a thing is not divided if it is left to exist as a whole. But it is evident that the word is here used in the sense of create, rather than in its primary sense of divide. It is, therefore, as much a compliance with the statute to say that a county shall consist of one road district as it is to say that it shall consist of two or more.

If it is the rule that the requirement that the size and form of the road district must be such as to permit oversight and management by one road supervisor is a reviewable question, we find nothing in the record to indicate an abuse of discretion on the part of the county commissioners in this respect. The only evidence touching upon the question is to the effect that no difficulty was experienced in this regard. On the contrary, the evidence of the county commissioners is to the effect that they found the single district a great benefit to the county, since it did away with divided authority and materially lessened the overhead charges of road supervision.

It must follow, we think, that the board of county commissioners did not act in excess of their powers when they divided the county into a single road district.

The second question involves the consideration of the so-called budget act. Rem. & Bal. Code, §§ 9208-9212.

Section 9208 provides:

"It shall be the duty of county commissioners, city and town councils, and school directors of school districts lying wholly, or in part, within the limits of any incorporated city or town, on or before the first Monday in September of each year, to make estimates of the amount required to meet the public expense for the ensuing year, and to be raised by taxation in such county, city, town, road, school, or other taxing district. Such estimates shall be fully itemized, showing under separate heads the amount required for each department, public office, public official, for each public improvement, for the maintenance of each public building, structure, or institution, the salary of each public officer or employee, the maintenance of public highways, roads, streets, bridges, the construction, operation and maintenance of each public utility, and shall contain a full and complete disclosure and statement of the contemplated expenditures for the ensuing year, showing the amount proposed to be expended from each separate fund, and the total amount of public expense. Said statement shall also contain an estimate of the receipts for the ensuing year from sources other than direct taxation, and the amount or amounts, proposed to be raised by taxation upon the real and personal property of such county, city, town, road, school, or other taxing district."

The following sections provide that the estimates made under the section quoted shall be published by the board of county commissioners, together with a notice that such board will meet on a day certain for a public hearing upon the estimates, at which time any taxpayer may appear and be heard for or against any proposed tax levy. It is further provided that when such hearings have been concluded, the county commissioners "shall proceed to make, determine and decide the amount of taxes to be levied upon the current assessment rolls," and that all taxes shall be levied

or voted in specific sums and shall not exceed the amount specified in such published estimate.

The form of the budget in the instant case with reference to public highways and roads, we have·hereinbefore outlined. It is not questioned that the estimates were made and properly published, and since we hold that it was within the commissioner's power to create a single road district·out of the territory comprising the county, the only question requiring notice is whether the estimates with relation to roads were stated with sufficient detail. We think they were. Indeed, it seems to us that it would be sufficient merely to name the maximum sum intended to be expended in each road district upon the roads therein, without specifically naming the roads. The budget here not only does this, but goes much farther. It names the specific sums intended to be expended upon particular roads. More detail it would be difficult to give and still leave the commissioners that degree of discretion necessary to enable them to keep the roads in proper repair. They cannot know in advance the extent of the use to which any particular road may be subjected, nor can they know in advance the particular form of repairs the road may require. Hence, of necessity, they must be given a wide latitude. Furthermore, the law was enacted in the interests of the taxpayer. Its purpose is to give him an opportunity to protest against the sum total of the proposed levy if he thinks it excessive, and details in particular expenditures were required that he might better inquire into the necessity of the particular expenditures. This requires no hard and fast rule with reference to the expenditure for the construction and upkeep of roads, and we are clear that the purposes were accomplished by the commissioners in this instance.

Complaint is made as to the manner in which the levy was contracted to be expended. It is said that the commissioners, instead of applying the sums raised by the levy upon the particular designated roads, contracted to expend them upon other and different roads. The commissioners point to another section of the statute, which they contend authorizes a diversion of the fund, but whether it does so or not we need not here determine. A misappropriation of taxes when levied or collected does not avoid the tax. It will subject the disbursing officers to the penalties provided in such cases, but a taxpayer cannot legally object to a tax because the officers have contracted to expend it for different purposes than that for which it was levied.

Nor is the present tax void because of the reduction made in the amount of the estimated levy. The reduction, it is true, was in a lump sum and was made without reference to the individual items comprising the levy, but the reduction was equivalent to a reduction *pro tanto,* that is, it operates as a reduction upon each individual item as well as a reduction upon the whole. As such, it was within the commissioners' powers.

The judgments entered were erroneous. They will therefore be reversed and the cause remanded with instructions to enter judgments in the several actions, to the effect that the plaintiffs, respondents here, take nothing thereby.

CHADWICK, C. J., HOLCOMB, MOUNT, and PARKER, JJ., concur.