[No. 27872. *En Banc.* February 7, 1940.]

THE STATE OF WASHINGTON, *on the Relation of Jack Taylor et al., Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY *et al., Respondents.*[1]

[1]Reported in 98 P. (2d) 985.

B. *Gray Warner* and *F. M. Reischling,* for relators.

*Weter, Roberts & Shefelman* and *Edwin C. Ewing,* for respondents.

*Ralph E. Foley, Harvey Erickson, F. C. Hackman,* and *W. G. McLaren, amici curiae.*

SIMPSON, J.—This proceeding is by way of a writ of certiorari to review the judgment of the superior court of King county in a mandamus proceeding.

Prior to October 1, 1939, the respondent officers filed with the auditor of King county detailed and itemized estimates both of the probable revenues from sources other than taxation and of all expenditures required by their respective offices for the ensuing fiscal year of 1940. Thereafter, the auditor, pursuant to the requirements of Rem. Rev. Stat., § 3997-2 [P. C. § 1652-2], prepared the budget for King county. The expenditure section of the budget set forth the estimated expenditures of each of the county offices for the year 1940. The estimates were itemized and classified

under the general classes of (1) "Salaries and Wages," (2) "Maintenance and Operation," and (3) "Capital Outlay." The county commissioners thereafter published notice that the hearing upon the budget would be held October 2, 1939. On that date, they met and passed a resolution, which, omitting the preamble, reads as follows:

"(1) That there be established a division of purchases, the head of which shall be the county purchasing agent, appointed by the board of county commissioners, who shall receive such a salary and give such bond as may be fixed by separate resolution, and who shall, subject to the supervision and control of the board of county commissioners, appoint, supervise and control all employees of said division, as provided by the laws of the state of Washington vesting control of the county business in the board of county commissioners.

"(2) The county purchasing agent, except as otherwise provided by statute, shall have the power and it shall be his duty to purchase and/or contract for all supplies, materials and equipment used or needed by the various county offices, departments, services or institutions in the administration of county business.

"(3) All funds appropriated by the board of county commissioners for the year 1940 in accordance with Rem. Rev. Stat., §§ 3997-1 to 3997-10 for 'Capital Outlay' and 'Operation and Maintenance' for the various county offices, departments, services or institutions, shall be expended by the county purchasing agent under the exclusive direction of the board of county commissioners, except as otherwise provided by statute.

"(4) That a detailed system of centralized county purchasing shall be adopted by subsequent resolution of the board of county commissioners."

Each of respondent officers, at the conclusion of the hearing on the budget, demanded that the county commissioners allocate and appropriate to him, as such

county officer, proper and sufficient amounts for expenditure by him under the classifications of "Maintenance and Operation" and "Capital Outlay." The relators refused to comply with the demand. They stated that the appropriations for the various county officers would be expended through the division of purchases and by the county purchasing agent, and that the respondents would not be permitted to make purchases for the maintenance and operation or for capital outlay necessary for the operation of their offices.

Respondent officers then instituted the proceeding of mandamus by which they sought to compel the county commissioners to allocate to each of them the funds necessary to conduct their offices and to be allowed to purchase their own supplies.

The relators demurred to the application for the writ upon several grounds. The court did not decide the question raised by the demurrer at the time it was presented, but stated that he would hear the case and make his decision at its conclusion. At the termination of the trial, findings of fact and conclusions of law were made, and a judgment and decree entered favorable to respondents.

The judgment and decree provided for the issuance of a peremptory writ of mandate commanding the county commissioners to make provision for, and to appropriate and allocate to the offices of, auditor, clerk, and treasurer, proper and sufficient amounts for expenditure by them under the classifications of "Maintenance and Operation" and "Capital Outlay." The decree further provided that the respondent officers be permitted to make the expenditures and incur the liabilities under the classifications for their respective offices and make the purchases represented thereby.

Relators submit ten assignments of error, all of which may be considered under the fifth assignment, which states that the court erred in holding that the county officers personally have the right to purchase the supplies necessary for the operation and maintenance of their respective offices, contrary to the expressed intent of the county commissioners to make the purchases.

The question for consideration is: Does the board of county commissioners have the power to set up under their direction and control a division of purchases, appoint as the head thereof a county purchasing agent, to prohibit the county officers making purchases for their offices, and to provide that all supplies needed by the officers shall be made by the purchasing agent?

In order to arrive at a decision, it will be necessary to examine our constitution and statutes, and the proceedings of the legislature, and to ascertain therefrom the powers and duties of the county commissioners and those of the county clerk, county auditor, and county treasurer.

Preliminary to consideration and review of the relevant provisions of the constitution and statutes, we deem it proper to mention some of the basic principles relative to the powers and duties of county corporate entity.

Counties are but arms or agencies of the state organized to carry out or perform some functions of state government. They, as instrumentalities of the state, have no powers except those expressly conferred by the constitution and state laws, or those which are reasonably or necessarily implied from the granted powers. *State ex rel. Board of Commissioners v. Clausen,* 95 Wash. 214, 163 Pac. 744; *Great Northern R. Co. v. Stevens County,* 108 Wash. 238, 183 Pac. 65;

*State ex rel. Spokane v. DeGraff,* 143 Wash. 326, 255 Pac. 371; *Spokane County v. Certain Lots in Spokane,* 156 Wash. 393, 287 Pac. 675; *Carpenter v. Okanogan County,* 163 Wash. 18, 299 Pac. 400; 14 Am. Jur., Counties, 188, § 5.

■ The officers concerned in this litigation, the county commissioners, county clerk, county auditor, and county treasurer, are servants of the county and, as such, have only those powers which have been expressly delegated to them by specific statutory language or by necessary implication therefrom. *Green v. Okanogan County,* 60 Wash. 309, 111 Pac. 226, 114 Pac. 457; *Northwestern Imp. Co. v. McNeil,* 100 Wash. 22, 170 Pac. 338; *Spokane, P. & S. R. Co. v. Franklin County,* 106 Wash. 21, 179 Pac. 113; *Sasse v. King County,* 196 Wash. 242, 82 P. (2d) 536; 46 C. J. 1031, § 287.

■ Our statutes do not in express terms designate any officer whose duty it is to purchase supplies for the offices of clerk, auditor, or treasurer.

The constitution of the state of Washington, Art. XI, § 5, provides:

"The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys, and other county, township, or precinct and district officers, as public convenience may require, and shall prescribe their duties and fix their term of office. It shall regulate the compensation of all such officers, in proportion to their duties, and for that purpose may classify the counties by population. And it shall provide for the strict accountability of such officers for all fees which may be collected by them, and for all public moneys which may be paid to them, or officially come into their possession."

We find legislative direction concerning the powers

and duties of county commissioners in the following sections of Rem. Rev. Stat.:

§ 3982 [P. C. § 1468]. "The several counties in this state shall have capacity as bodies corporate to sue and be sued in the manner prescribed by law; to purchase and hold lands within its own limits; to make such contracts, and to purchase and hold such personal property, as may be necessary to its corporate or administrative powers, and to do all other necessary acts in relation to all the property of the county."

§ 3984 [P. C. § 1470]. "Its powers can only be exercised by the county commissioners, or by agents or officers acting under their authority or authority of law."

§ 4032 [P. C. § 1667]. "The boards of county commissioners of the several counties of the state shall provide a suitable furnished office for each of the county officers in their respective courthouses."

§ 4056 [P. C. § 1664]. "The several boards of county commissioners are authorized and required,—

"1. To provide for the erection and repairing of courthouses, jails and other necessary public buildings for the use of the county; . . .

"5. To allow all accounts legally chargeable against such county not otherwise provided for, and to audit the accounts of all officers having the care, management, collection, or disbursement of any money belonging to the county or appropriated to its benefit;

"6. To have the care of the county property and the management of the county funds and business, and in the name of the county to prosecute and defend all actions for and against the county, and such other powers as are or may be conferred by law."

By the provisions of Rem. Rev. Stat., §§ 75, 446, 646, and 10636 [P. C. §§ 8580, 8110-15, 7960, 5739], the county clerk is compelled to keep certain books of record; and § 10600 [P. C. § 1639] provides: "The county auditor shall procure such books for records as the business of the office requires . . ."

Rem. Rev. Stat., § 4034 [P. C. § 9211], reading as follows,

"The county in which the court is held shall furnish the courthouse, a jail or suitable place for confining prisoners, books for record, stationery, lights, wood, attendance, and other incidental expenses of the courthouse and court;"

provides, in a very general sense, for the acquisition of supplies necessary to conduct the business of the county.

The relators contend that the boards of county commissioners of the several counties are the statutory business managers of the counties; that the power to purchase the necessary supplies and materials for the operation and maintenance of the various county offices and the county departments is an essential incident to the proper supervision of county business; and that, as managers of the county funds and business, they must purchase all supplies to be used by the various county officers. In support of their argument, they cite *Martin v. Whitman County,* 1 Wash. 533, 20 Pac. 599; *State ex rel. Whitney v. Friars,* 10 Wash. 348, 39 Pac. 104; *Olympian-Tribune Pub. Co. v. Byrne,* 28 Wash. 79, 68 Pac. 335; and *Singleton v. Hamilton,* 90 Wash. 243, 155 Pac. 1057.

Those cases lay down the rule that the county commissioners have a supervisory power over the affairs of the county; that they are the business agents of the county, have the care and management of the county funds and business, and have the power to properly exercise those rights and duties. In none of those cases, however, do we find a holding that the county commissioners have the power to purchase or to supervise the purchases of supplies for other county offices.

Relators lay particular stress upon the decision of this court in *State ex rel. Whitney v. Friars, supra.*

They contend that the holding in that case gave the county commissioners the necessary power to purchase all supplies for county officers. The case was one in which the county commissioners were charged, among other things, with conspiring with the county auditor to purchase supplies for the county. It is not indicated in the opinion that the supplies mentioned were to be used by any county officer in conducting the business of his office. The opinion states:

"The county commissioners are constituted by the law the guardians of the county and its business managers, and while the power to appoint an agent is not expressly granted, the power which they do have under the law necessarily carries with it all the powers necessary to the proper exercise of the power granted."

However, that general statement did not in any way impinge upon the rights of other county officials. As a matter of fact, most of the county supplies purchased for the use of the county are utilized by the commissioners in conducting the general affairs of the county, and do not come under the jurisdiction of other county officers.

In this connection, we note that the general affairs of the county include the care of county buildings, construction and upkeep of highways and bridges, the management of hospitals, the sale of county owned tax property, and work in connection with the welfare department. These classifications, over which the county commissioners have direct jurisdiction, make up the major portion of county business requiring extensive purchasing.

Our attention has been directed to *Magoon v. Board of Commissioners of Valley County,* 58 Idaho 317, 73 P. (2d) 80, in which the supreme court of Idaho held that county officers had no express or implied authority to purchase personal property for the use of the county,

but that the authority to do so is vested in the board of county commissioners. The Idaho statute (Code 1932, § 30-707) upon which the holding was grounded, provides that the county commissioners shall have the power "To purchase, receive by donation, or lease any real or personal property necessary for the use of the county." Our statutes do not contain a similar provision.

As has been stated, the board of county commissioners may exercise only that authority expressly conferred by statute or those necessarily implied from the powers given.

"It is a familiar principle that a board of county commissioners can exercise no powers which are not in express terms or by fair implication conferred upon it by law, and whenever the board ventures beyond the scope of its powers its acts are void, and not binding upon the county. *Hodges v. City of Buffalo*, 2 Denio, 110; *Thomas v. Lee County*, 3 Wall. 327; *Wells v. Supervisors*, 102 U. S. 625; *Turnpike Co. v. Commissioners*, 72 Ind. 226.

"Turning to the statutes of the territory, we find that among the powers conferred upon the boards of county commissioners are the following:

" 'Sec. 2673. The several boards of county commissioners are authorized and required: . . . (5) To allow all accounts legally chargeable against such county not otherwise provided for, and to audit the accounts of all officers having the care, management, collection or disbursement of any money belonging to the county, or appropriated to its benefit. (6) To have the care of the county property and the management of the county funds and business, and in the name of the county to prosecute and defend all actions for and against the county, and such other powers as are or may be conferred by law.'

"By this section, taken in connection with other provisions of the statute not necessary to cite here, the board of county commissioners are given a sort of supervisory power over the affairs of the county. They

are made the business agents, so to speak, of the county. They have the care and management of the county funds and county business. And while they have no direct authority over, or power to interfere with, the several county officers in the discharge of their respective duties, yet they have the power, and it is made their duty, to care for the county property, and manage the county funds and business." *Martin v. Whitman County,* 1 Wash. 533, 20 Pac. 599.

Again, in the case of *Flint v. Horsley,* 25 Wash. 648, 66 Pac. 59, this court stated:

"A board of county commissioners is a tribunal of special and limited jurisdiction. Its powers are wholly statutory. It must act, if it acts legally and within its authority, in substantial accord with the statute granting its powers."

Of like import are *Spokane, P. & S. R. Co. v. Franklin County, supra; State v. Vantage Bridge Co.,* 134 Wash. 568, 236 Pac. 280; and *Carpenter v. Okanogan County,* 163 Wash. 18, 299 Pac. 400.

The respondent officers are independent elective officers and are not in any way subordinate to the county commissioners, but responsible only to the people of their county.

The individuals holding these offices are required by law to perform certain definite governmental duties. It is a well recognized rule that a general grant of power or statutory direction to perform official duties, unaccompanied by definite directions as to how the power is to be exercised or the duty performed, implies the right and duty to employ the means and methods necessary to comply with the statutory requirements. 2 Lewis' Sutherland Statutory Construction, 942, § 508; Throop on Public Officers, 515, § 542.

As we have heretofore pointed out, examination of all applicable statutes discloses that the legislature of this state has not, in direct language, specifically con-

ferred upon any other county official the purchasing power sought to be exercised by respondent officers. The inference logically to be drawn from the absence of legislative direction is that, in the performance of their duties, respondent officers not only had the power, but it was their duty, to purchase the supplies necessary to the maintenance of their respective offices.

■ This reasoning is strongly confirmed by administrative practice of long standing. So far as the record discloses, only two counties in this state, Pierce and Chelan, use a centralized purchasing plan. In each of these counties, the departure from the general practice did not have its inception until 1935, and in each instance it was undertaken and continued subject to the agreement and approval of all county officials. Otherwise, the uniform practice throughout the life of this state has been for the individual county officials to make the expenditures and incur the liabilities for the conduct of their respective offices.

We made this statement in *State ex rel. Ball v. Rathbun*, 144 Wash. 56, 256 Pac. 330:

"An executive construction is accepted generally by the courts as persuasive where the legislature has silently acquiesced in such construction by failing to amend the particular act."

In *Long v. Thompson*, 177 Wash. 296, 31 P. (2d) 908, we said:

"The rule is universal that the courts, in ascertaining the meaning of an ambiguous statute, will accord great weight to administrative or executive construction of, and practice under, it."

Further recognition has been accorded to this rule in *State ex rel. George v. Seattle*, 184 Wash. 560, 52 P. (2d) 360; *Albrecht v. Department of Labor & Industries*, 192 Wash. 520, 74 P. (2d) 22; and *Goodwin v.*

*Northwestern Mutual Life Ins. Co.,* 196 Wash. 391, 83 P. (2d) 231.

This general practice has, of course, been within the knowledge of the members of our legislative bodies during the many times since statehood that they have been in session. The legislature has not, however, seen fit to change that practice.

The evidence discloses that, during the legislative sessions of 1935, 1937, and 1939, bills were introduced which provided for the creation of a county purchasing department under the supervision of the board of county commissioners. The 1935 bill applied to counties of the first class; that of 1937 to any county, and the bill introduced in 1939 referred to class "A," first class, second class, and third class counties. Each of these bills failed of passage. Failure in each instance manifested a legislative intent and desire that the counties continue the established practice of having each officer purchase the supplies necessary for the proper conduct of his office.

█ It is our opinion that the legislature settled the question presented by this case when it passed the county budget law (Laws of 1923, chapter 164, p. 523; Rem. Rev. Stat., §§ 3997-1 to 3997-10 [P. C. §§ 1652-1 to 1652-10], inclusive). The first section of the act provides that each county officer shall file with the county auditor, on or before the second Monday in August of each year, detailed and itemized estimates "of all expenditures required by such office, department, service or institution for the ensuing fiscal year."

Rem. Rev. Stat., § 3997-5 [P. C. § 1652-5], provides:

"The county commissioners and every other county official shall be limited in the making of expenditures and/or the incurring of liabilities to the amount of such detailed appropriation items or classes respectively; . . .

"Expenditures made, liabilities incurred or warrants issued in excess of any of the detailed budget appropriations or as revised by transfer as herein provided shall not be a liability of the county but the official making or incurring such expenditure or issuing such warrant shall be liable therefor personally and upon his official bond."

These provisions are clearly indicative of legislative sanction of the established administrative practice. Plainly, the legislature contemplated that not only county commissioners, but other county officials, should make expenditures and incur liabilities. Had its intention been otherwise, the legislature would not have mentioned "every other county official," nor would it have referred to the liability of "the official making or incurring such expenditure."

Many legislative sessions have been held, during which county officials have continued to purchase needed supplies without interference on the part of the boards of county commissioners. The legislature has not, during those sessions, changed the existing practice. On the other hand, it has endorsed the exercise of the purchasing power by the county officials through the enactment of the county budget law, and has defeated three bills designed to put into execution the plan proposed by relators.

We conclude that the legislative intent, as indicated by present laws, and by the conduct of that body during the life of the territory and state, clearly bespeaks a command to the various county officials to purchase, independently, the supplies necessary for their offices.

The judgment of the trial court was correct, and is affirmed.

BLAKE, C. J., MAIN, MILLARD, STEINERT, ROBINSON, and JEFFERS, JJ., concur.

GERAGHTY, J. (dissenting)—I find myself unable to concur in the majority opinion. The resolution of the board of county commissioners, as set out in the opinion, covers much territory and possibly implies a claim of authority beyond that vested in the commissioners by statute. But the issue involved in the present case, as stated in the opinion, is whether the county commissioners have the power to set up, under their direction, an agency for the purchase of all supplies needed by the offices and departments of county government, including the offices of the elected officials. The question, of course, is one of power and is to be resolved by reference to the pertinent statutes, as quoted in the majority opinion.

As I read these statutes, they contemplate an integrated county government, at the head of which is the board of county commissioners, in which is lodged a large measure of supervision and control over the business affairs of the county government. Specific duties are devolved upon the elective officials, for the proper execution of which they are individually responsible. These elective officials, however, are not separate governmental units, but, rather, integral parts of the county government. The commissioners, as the governing board of the county, are required to supply the elective officials with housing and facilities adequate to their needs, and this is specifically provided for in the budgeting process outlined in the budget law. The fact that specific sums are allocated to the several offices for their needs does not negative the right of the commissioners to provide a central agency for making the purchases required in the conduct of the county's business.

Reference is made in the opinion to the cases cited by the relators in support of their contention, and it is said of these cases that they lay down the rule

". . . that the county commissioners have a supervisory power over the affairs of the county; that they are the business agents of the county, have the care and management of the county funds and business, and have the power to properly exercise those rights and duties."

It seems to me that the right to centralize the county's purchases in one agency is obviously within the large range of power conceded by the majority to be possessed by the county commissioners. It was so held, in very apt language, in the case of *State ex rel. Whitney v. Friars,* 10 Wash. 348, 39 Pac. 104, where the prosecuting attorney brought an action seeking to have a board of county commissioners removed from office for certain acts of misfeasance and malfeasance. One of the charges made against the county commissioners was that they had conspired with the county auditor to purchase supplies for the county. Disposing of this charge, the court, speaking through Judge Dunbar said:

"The second charge, viz., that the defendants conspired with the auditor to purchase supplies for the county, equally fails, it seems to us, to state a cause of action. The county commissioners are constituted by the law the guardians of the county and its business managers, *and while the power to appoint an agent is not expressly granted, the power which they do have under the law necessarily carries with it all the powers necessary to the proper exercise of the power granted."* (Italics mine.)

The majority opinion, conceding the large measure of power vested in the commissioners under our decisions, comments that in none of the cited cases is found a holding that the county commissioners have the power to purchase or supervise the purchase of supplies for other county offices.

This argument is answered effectively by the lan-

guage of Judge Dunbar in the *Friars* case. I concede that the elective officials must have a large measure of discretion in determining the type of supplies and equipment they require. They require books and records of a special kind, as well as certain kinds of equipment and mechanical aids, in carrying on their business. Undoubtedly, it is for them to determine the types of records and office equipment best adapted to their needs. But conceding them this right, I am unable to see that it is at all infringed by requiring that the property they need be purchased upon their requisitions by a purchasing agent. This is the way most governmental business is conducted at the present day, and there is nothing in the statutes to forbid it.

A point is made in the majority opinion on the fact that bills introduced in the legislature specifically granting power to the county commissioners to employ a purchasing agent have failed of passage. This argument cuts both ways. It may, with at least equal force, be argued that the legislature declined to enact the bills into law because it assumed the law to be unnecessary, its purpose being met by existing statutes, as construed by this court.

BEALS, J. (dissenting)—In the main, I concur in the views expressed by Judge Geraghty. Under existing laws, the county commissioners may set up an agency through which the elective county officers may requisition needed supplies, within their respective budget allowances, such officers to determine the quality and description of the articles they desire. I accordingly dissent from the conclusion reached by the majority.