[No. 9499.  Department One.  July 20, 1911.]

W. T. WILLIAMSON, *Appellant*, v. SNOHOMISH COUNTY,
*Respondent.*[1]

COUNTIES—COUNTY COMMISSIONERS—CONTRACTS—AUTHORITY—EM-
PLOYMENT OF ALIENIST TO ASSIST PROSECUTING ATTORNEY.  Under Rem.
& Bal. Code, § 3890, conferring upon county commissioners the gen-
eral management of county expenditures and business, they have
authority to employ an alienist when his services are necessary to
aid the prosecuting attorney in connection with the defense of in-
sanity in a prosecution for homicide; and such employment is not
unauthorized as relating only to judicial business.

Appeal from a judgment of the superior court for Sno-
homish county, Black, J., entered January 20, 1911, upon
sustaining a demurrer to the complaint, dismissing an action
on contract. Reversed.

*Gordon D. Eveland* and *Marion A. Butler*, for appellant.

*Ralph C. Bell*, for respondent.

PARKER, J.—The plaintiff commenced this action to recover
from Snohomish county the sum of $950, upon a contract
for his services as an alienist rendered in connection with the
trial of a defendant upon a charge of homicide involving the
defense of insanity. The county's demurrer to the plaintiff's
complaint being sustained by the superior court, he elected
to stand thereon and not plead further, when judgment of
dismissal was rendered against him, from which he has ap-
pealed.

The only question presented by counsel is as to the power
of the county commissioners to authorize the prosecuting at-
torney to enter into the contract sued upon. The allegations
of the complaint necessary for us to notice are as follows:

"(7)  That, by reason of the plea of insanity so interposed
by said defendant as a defense to the charge set forth in said

[1] Reported in 116 Pac. 675.

information, the said prosecuting attorney deemed it necessary, and it was necessary, to have and employ a skilled and experienced alienist to become a witness and to aid said prosecuting attorney in acquiring necessary information to intelligently prosecute the said cause; and that, by reason of the interposition of said plea of insanity by said defendant, and by reason of the necessity arising therefrom, requiring the employment of a skilled and experienced alienist, the said board of county commissioners finding that it was necessary to employ a skilled and experienced alienist to assist said prosecuting attorney in the manner as aforesaid, said board of county commissioners acting for and on behalf of said county, and as it, in good faith believed, for the best interests of said county, authorized and empowered said prosecuting attorney to procure, upon the terms and for the purposes stated in paragraph VIII hereof, the services of plaintiff herein, a citizen of the state of Oregon, residing at Portland, Oregon, he, the said plaintiff, then and there being an alienist of wide experience and recognized ability and learning upon the subject of insanity.

"(8)    That, in the month of October, 1908, said prosecuting attorney acting as such officer, and as he, in good faith believed for the best interest of said county, and in pursuance of the previous authorization of said board of county commissioners, entered into a contract for and on behalf of said county with said plaintiff, by the terms of which said plaintiff was employed particularly to qualify himself to become a witness in the above-entitled cause by attending court during the entire time in which the testimony should be taken; by reviewing and familiarizing himself with the authorities upon the subject of insanity and mental diseases and by carefully studying the facts as shown by the evidence from the standpoint of insanity and mental diseases, and to hold himself in readiness both before and during the course of the trial, to give to said prosecuting attorney such information within his knowledge respecting the subject of insanity and mental diseases as said prosecuting attorney might ask for, and to make a personal examination of the defendant if such examination should be desired; that it was further agreed by the terms of said contract that said plaintiff, for and in consideration of the services so to be rendered, should receive the sum of one hundred dollars for the first day

that he should be in attendance upon the above-entitled cause for the purposes contemplated by said contract, and fifty dollars a day for each and every day thereafter that he should be required to attend the above-entitled court in connection with said cause. That said sum so contracted, to be paid to said plaintiff, is, and for many years has been, the regular and customary fee for such services.

"(9)    That said cause came on for trial on the 12th day of October, 1908; and said plaintiff, in compliance with the terms of said contract, attended the same and was present in court as required, under and by virtue of the terms of said contract, during the entire period in which the testimony submitted therein was being introduced; that said plaintiff carefully listened to and studied said testimony, reviewed and studied the authorities upon the subject of insanity and mental diseases; held himself in readiness to and did give to said prosecuting attorney such information in reference to the subject of insanity and mental diseases as said prosecuting attorney asked him for; held himself in readiness to make a personal examination of the said John H. Jahn, if such examination should be desired, and finally became a witness in said cause, giving to the court and jury his opinion as to the insanity or mental irresponsibility of said John H. Jahn and stating his reasons therefor, based upon his particular preparation and study of this particular cause. That said plaintiff was in attendance upon such trial in pursuance of the terms of said contract for the period of eighteen days, and in accordance with the terms thereof, is entitled to the sum of $100 for the first day so in attendance, and $50 for each and every day thereafter."

The statutory provisions which must be relied upon to sustain appellant's contention that this contract is within the power of the county commissioners to make, or authorize the making of, in behalf of the county are found in Rem. & Bal. Code, § 3890, as follows:

"The several boards of county commissioners are authorized and required . . .

"(5)    To allow all accounts legally chargeable against such county not otherwise provided for, and to audit the accounts of all officers having the care, management, collection,

or disbursements of any money belonging to the county or appropriated to its benefit;

"(6)　To have the care of the county property and the management of the county funds and business. . . ."

This has been the law since early territorial days, and a large part of the county expenditures made by the boards of county commissioners rest upon no other authority.

In the early case of *Martin v. Whitman County*, 1 Wash. 533, 20 Pac. 599, commenting upon this section and the authority it gives for incurring expense in the administration of the county affairs, the court said:

"By this section, taken in connection with other provisions of the statute not necessary to cite here, the board of county commissioners are given a sort of supervisory power over the affairs of the county. They are made the business agents, so to speak, of the county. They have the care and management of the county funds and county business. And while they have no direct authority over, or power to interfere with, the several county officers in the discharge of their respective duties, yet they have the power, and it is made their duty, to care for the county property, and manage the county funds and business, and in the exercise of such powers they may, if they see fit, employ experts to examine the books of county officers; they may employ private counsel to assist the district attorney in defending the county against suits brought against it, or in prosecuting suits in behalf of the county against others; and, as in the case at bar, they may employ persons to make compilations or transcripts from any of the county records whenever, in their judgment, the interests of the county may require it."

In the case of *State ex rel. Thurston County v. Grimes*, 7 Wash. 445, 35 Pac. 361, discussing the obligations of the state and county for expenses incurred in the administration of the criminal laws, the court said:

"The general rule under our system of county organization is, that the counties are burdened with the entire cost of the administration of the criminal laws within their boundaries; and, in turn, they receive and appropriate to their own use all fines and costs collected in criminal cases. . . .

In unsuccessful prosecutions, no matter what the grade of the crime, they bear the entire expense; and in all cases they must, in the first instance, disburse for all such expenses, and are directly liable to officers, witnesses, jurors, etc."

Now it is not seriously contended, indeed, it could not be, but that the allegations of this complaint are sufficient to show that the services of appellant contracted for and rendered by him were necessary and a material aid to the proper prosecution of the accused, in view of his plea of insanity. Every lawyer of experience in the practice knows that there are many things necessary to be done in the proper and effectual preparation and trial of causes which involve the incurring of expense besides the mere compensation of attorney and statutory witness fees. These things are as necessary in securing the proper protection of the public rights in criminal prosecutions as well as when private rights only are in litigation. If the expenditure of county funds was limited in aiding prosecutions under the criminal laws only to the payment of attorneys and statutory witness fees, many of the most important cases could not be presented to the courts in such manner as to effectually protect the rights of the public. It seems to us that the power of the county commissioners to authorize the incurring of such an obligation as is here involved is as clearly inferable from these statutory provisions as is their authority to incur expenses in the conduct of the county's business in numerous other matters, in which it is conceded they have such authority, though not specifically provided for by statute.

Our attention is called to *Smith v. Lamping*, 27 Wash. 624, 68 Pac. 195; *Mather v. King County*, 39 Wash. 693, 82 Pac. 121, and *McElwain v. Abraham*, 58 Wash. 26, 107 Pac. 832, to support the county's contention; but a reading of these cases will show that in each one the commissioners were attempting to provide something at the county's expense in addition to that which the law had specially provided for in the particular matter involved.

Some contention is made that this contract does not involve county business, but that it relates to judicial business only. We cannot agree with this contention. It does not involve the payment of any court officer's salary or the expense of maintaining the courts; it does not involve the payment even of statutory witness fees although it incidentally involves a witness' compensation, yet much more than that, for it is evident that the services contracted for and rendered by appellant were more than that of a mere witness, and more than that which could have been coerced from him by a subpoena.

We are of the opinion that the judgment must be reversed and the county's demurrer overruled. It is so ordered, with directions to the superior court to proceed accordingly.

MOUNT, GOSE, and FULLERTON, JJ., concur.