[No. 21013.   Department Two.   February 7, 1928.]

THE STATE OF WASHINGTON, *on the Relation of Will R. Heglar et al., Respondents,* v. H. H. WHEELER, *as Auditor, Appellant.*[1]

[1] COUNTIES (90)—GAME FUND—CLAIMS AGAINST—AUDIT AND ALLOWANCE. Rem. 1927 Sup., § 5931-32, providing that all claims against the county game fund shall be audited by the county game commission, repeals the provisions of the former game code, Rem. Comp. Stat., § 5965, providing that such claims shall be audited by the county officers in the same manner as other claims against the county; especially in view of the fact that claims against the game funds are not claims against the county, and that county game commissioners are state officers.

Appeal from a judgment of the superior court for Whitman county, McCroskey, J., entered August 29, 1927, in favor of the plaintiff, in mandamus to compel the issuance of warrants against the county game fund, after a trial to the court on the merits. Affirmed.

*W. L. LaFollette, Jr.,* and *S. R. Clegg,* for appellant.

*John D. Evans* and *Pickrell & Stotler,* for respondent.

*The Attorney General* and *E. W. Anderson, Assistant, amici curiae.*

[1]Reported in 263 Pac. 946.

HOLCOMB, J.—The Whitman county game commissioners presented claims to the county auditor for payment. He refused to pay them without first submitting them to the board of county commissioners for examination and allowance. Upon such refusal, the county game commissioners brought action to compel the county auditor, by mandate, to issue his warrants in payment of the claims. Upon hearing, upon stipulated facts, the trial judge granted the mandate.

[1] The sole question involved here is whether the auditing and allowance of the claims by the game commission, without also having been submitted to and allowed by the board of county commissioners, is sufficient under our present game code.

The trial judge entered a memorandum opinion in the matter, which we here set out in full, with the exception of the formal parts:

"The relators composing the board of game commissioners of Whitman county seek in this suit to compel the defendant, as county auditor, to issue warrants for certain charges audited by the relators as the board of game commissioners, and payable out of the game fund of the county.

"It is stipulated by the parties that on August 5, 1927, at a regular meeting of the board of game commissioners, the claims were duly audited, allowed, and filed with the defendant, but have not been allowed by the county commissioners.

"Relators contend that under ch. 178, § 32, of the Laws of 1925 (Extraordinary Session), claims of this character must be paid by auditor's warrants without presentation to the board of commissioners for their approval; while defendant contends that § 4086, Remington's Codes, prohibits his issuance of warrants without approval by the board of commissioners; citing *State ex rel. Egbert v. Blumberg,* 46 Wash. p. 270, and *State ex rel. Beach v. Oleson,* 91 Wash. p. 56.

"In order to determine the intention of the legislature in its enactment of the game code of 1925, as it relates to payment of claims, it is necessary to examine to some extent the previous history of legislation on this subject, and its connection with the general law laying down the duty of the county auditor.   Section 4086, *supra,* provides that the auditor—

" ' .  .  .  shall audit all claims, demands and accounts against the county which by law are chargeable to said county, except such cost or fee bills as are by law examined or approved by some other judicial tribunal or officer. *Such claims as it is his duty to audit* shall be presented to the board of county commissioners for their examination and allowance.'

"In the game code prior to the enactment of the 1925 law, it was provided (§ 5965, Rem. Comp. Stat.) :

" 'That all payments made under the provisions of this act shall be made by warrants in the usual manner, and shall be *audited* by the state and county officers in the same manner as other claims against the state of Washington and the various counties are audited.'

"The case of *Egbert v. Blumberg* cited by defendant, involved a claim for fruit inspection which the county auditor refused to pay unless approved by the board of commissioners.   It was held that he was not authorized to draw a warrant for the claim unless so approved.   That case, however, is not decisive here.   The fruit inspection law there under consideration made no provision for the *audit* of such claims by the fruit inspector, nor did it in any manner relieve the board of commissioners from passing upon and approving such claims.   There the claim was against the county.

"In the case of *Beach v. Oleson* above mentioned, the game warden sought to require the auditor to issue a warrant for his salary and certain expenses, without presentation of these claims to the board of county commissioners.   The court held that since the game code as it then existed required all claims to be audited by the county officers, in the same manner as other claims against the various counties are audited (Sec. 9565, Rem. Comp. Stat.), the auditor was not justified

in issuing the warrant without the assent of the board of commissioners. The legislature in its extraordinary session of 1925, ch. 178, § 32, provides that:

" 'All payments from the state game fund or county game fund authorized by this act shall be made by county or state warrants respectively, and all claims against the county game fund shall be audited by the county game commission in their respective counties, and all claims against the state game fund shall be audited by the supervisor of game and game fish.' [Rem. 1927 Sup., § 5931-32]

"The game code in effect at the time of the enactment of 1925 specifically required the county commissioners to approve claims against the game fund, and this was upheld by the court in the case of *Beach v. Oleson, supra.* Thereafter the game code of 1925 was enacted, authorizing the game commission to *audit* these claims. Since § 4086 relieves the auditor from presenting to the board of county commissioners for examination and allowance claims which it is not his duty to *audit*, and by the strongest possible inference requires him to issue warrants for such claims without presentation to the board of commissioners, he is here charged with the duty of issuing warrants without such presentation.

"Technically, a claim against the game fund is not a charge against the county. The fund is provided from various sources, including hunting licenses, fines in connection with hunting and game and similar sources. It is not raised by taxation, and the county commissioners have no supervision over it. The game commission is given authority to buy and sell property useful to the conservation of game, and perform other functions entirely removed from other supervision.

"I conclude that relators are entitled to the writ prayed for, . . ."

The opinion of the trial judge is in all respects correct.

The legislature has undoubted power to repose the matter of auditing claims and ordering payment thereof upon any officer or tribunal having proper

relation to the matter in hand.   *State ex rel. Egbert v. Blumberg,* 46 Wash. 270, 89 Pac. 708.

The distinctions made by the trial judge between the cases relied upon by appellant are correct.   When the legislature used the terms in the game code enacted in 1925, it doubtless did so advisedly.   The game funds of the state and counties are not part of the general funds of the state and counties.

In the sense in which the word "audit" was used in the statute (§ 5931-32, Rem. Comp. Stat., 1927 Sup.) it was undoubtedly the intention of the legislature to mean "audit and allow, or reject."

"In its general sense, 'to audit' means to adjust; to allow or reject; to ascertain; to determine; to decide; to pass upon; to settle; to hear, examine, and determine a claim, by its allowance or rejection in whole or in part; and implies the exercise of discretion.   The term is infrequently used in a narrow and restricted sense to denote the mere verification of figures and computations—the work of a mere accountant." *Etzold v. Board of Commissioners of Huntington County,* 82 Ind. App. 655, 146 N. E. 842.

" 'To audit' means 'to examine and verify, as an account or accounts.'   Cent. Dict.   In its broad sense 'audit' means to hear, examine, and determine a claim or claims by their allowance or disallowance or rejection in toto, or in part, . . .   *People v. Orleans County Supervisors,* 16 Misc. Rep. 213, 38 N. Y. Supp. 890, 891; *Machias River Co. v. Pope,* 35 Me. 19, 22; *People ex rel. v. Matthies,* 179 N. Y. 242, 72 N. E. 103; 4 Words & Phrases Judicially Defined, Second Series, 931."   *United States v. Bentley & Sons Co.,* 293 Fed. 229.

To audit means

" . . . to hear, examine, adjust, pass upon, and settle an account, and then allow it; to hear, and upon the hearing to adjust, or to allow, or to reject, or otherwise decide, according to the nature of the claim."   4 Cyc. 1056.

See, also, *Travelers' Ins. Co. v. Pierce Engine Co.*, 141 Wis. 103, 123 N. W. 643; *McGuire v. Iowa County*, 133 Iowa 636, 111 N. W. 34; *Clement v. City of Lewiston*, 97 Me. 95, 53 Atl. 984; *Stemmler v. New York*, 179 N. Y. 473, 72 N. E. 581; *Territory v. Grant*, 3 Wyo. 241, 21 Pac. 693; *Cooke v. Board of Com'rs of Custer County*, 13 Okl. 11, 73 Pac. 270; *Syracuse v. Roscoe*, 66 Misc. Rep. 317, 123 N. Y. Supp. 403.

It should be borne in mind that former statutes, involved in the cases cited and distinguished in the opinion of the trial judge, by reference and inference, required auditing and allowance by the board of county commissioners. It is contended here, that since Rem. Comp. Stat., § 4086 [P. C. § 1624], requires examination and allowance of general claims by the county auditor and the county commissioners as a part of the audit, it is not to be considered that the recent enactment intended in any way to repeal or modify that general statute.

On the contrary, we think the recent enactment had that very purpose. Otherwise the legislature could, and probably would, have also provided in the statute that the claims be audited by the game commission and then presented to, audited, and allowed or rejected by the board of county commissioners. There is no such requirement.

As to general claims against a county, the county auditor is but a ministerial officer, whose duty it is to make computations and mathematical examinations of claims to be presented to the county. No discretionary power is reposed in him. The quasi-judicial duty of passing upon the claims finally is vested in the board of county commissioners. Here, under the new statute, the quasi-judicial power to pass upon the claims is vested in the game commissioners. No other board or officer is given any power over such matters—subject

only to the duty of an officer not to recognize or pay claims illegal on their faces, or known to be fraudulent.

We have also held that state and county game commissioners are state officers. *State ex rel. Lopas v. Shagren,* 91 Wash. 48, 157 Pac. 31; *State ex rel. Ball v. Rathbun,* 144 Wash. 56, 256 Pac. 330. They therefore have such relation to the control of the game funds and of the operation of the game law itself, under all its provisions, that we think it obvious that the legislature intended to entrust the game commission with the administration of the game funds and to deprive boards of county commissioners of such authority.

The judgment of the trial court is, therefore, affirmed.

MACKINTOSH, C. J., ASKREN, MAIN, and FULLERTON, JJ., concur.