[No. 28811.   *En Banc.*   January 26, 1943.]

THE STATE OF WASHINGTON, *on the Relation of May J. Becker, as Executrix, Appellant,* v. LOTA KING WILEY, *as Auditor of Grays Harbor County, Respondent.*[1]

[1] Reported in 133 P. (2d) 507.

*Paul O. Manley,* for appellant.

*L. B. Donley,* for respondent.

JEFFERS, J.—This action was commenced in the superior court for Grays Harbor county by the state of Washington on the relation of May J. Becker, executrix of the estate of Frank J. Becker, deceased, against Lota King Wiley, as auditor of Grays Harbor county, for the purpose of obtaining a writ of mandamus ordering and directing the auditor to issue and deliver to relator a warrant upon the current expense fund of Grays Harbor county, for the sum of fifty dollars, in payment of the September, 1941, rental for office space in the Becker building, in Aberdeen, occupied by

Stanley J. Krause, prosecuting attorney of Grays Harbor county.

From the affidavit and application for the writ, signed by relator, it appears that the estate of Frank J. Becker, deceased, is the owner and in control of an office building in Aberdeen, Washington, known as the Becker building, and that relator is the duly appointed, qualified, and acting executrix of the estate. It further appears that relator had presented to the board of county commissioners of Grays Harbor county a claim-voucher in the sum of fifty dollars, for rent for the month of September, 1941, for office space in the Becker building used by the prosecuting attorney; that such claim-voucher was approved by the board and ordered paid, but respondent auditor arbitrarily and unlawfully refused to comply with the order of the board and issue and deliver to relator a warrant for such rent; that more than ten days have elapsed from the time the order of the board was made and the time when relator made demand on the auditor for a warrant; that the 1941 budget provided for rental of an office in Aberdeen to the extent of six hundred dollars, and that all of that amount has not been expended.

Respondent auditor filed a return to the writ, wherein it is alleged that the board, in attempting to authorize the rental of office space for the prosecuting attorney in Aberdeen, was acting beyond its power and jurisdiction; that adequate provision had been made for the prosecuting attorney in the courthouse at Montesano, the county seat; and that the Aberdeen office was used primarily for the private law business of the prosecutor and his deputies.

Relator demurred to the affirmative matter set up in the return. The demurrer was overruled, and the court proceeded to hear testimony. The only witnesses

were Mr. Krause, the prosecuting attorney, and Mr. Manley, one of his deputies. The court made and entered findings of fact, conclusions of law, and a decree in favor of respondent, and from this decree dismissing the proceedings with prejudice, relator has appealed.

The material facts as found by the trial court, and as they appear from the record, may be stated as follows: The prosecuting attorney's office of Grays Harbor county is composed of the prosecuting attorney, Stanley J. Krause, and two deputies. One of the deputies maintains his office at all times in quarters in the courthouse at Montesano, which quarters consist of one private office and a waiting room. In 1940, when the budget for the prosecuting attorney's office for 1941 was arranged and adopted by the commissioners, funds were provided for the payment of rental for an office at Aberdeen, in the sum of six hundred dollars, which funds have not been wholly expended for that purpose or any other. Since the spring of 1940, Mr. Krause and his deputy, Paul Manley, have occupied office space in the Becker building, in Aberdeen, and have used that office for the conduct of the official business of the prosecuting attorney. Neither Mr. Krause nor Mr. Manley maintains a separate private office, and both of them have some private practice, which the court found was conducted in the Aberdeen office. However, the court also found that there had been no neglect of the county business by the prosecutor or his deputies.

Aberdeen is about ten or eleven miles west of Montesano, the county seat, and Hoquiam is about four miles west of Aberdeen. The population of Grays Harbor county is about fifty-three thousand; the population of Aberdeen, about nineteen thousand; Hoquiam, about

eleven thousand; and Montesano, about two thousand two hundred.

Mr. Krause testified, and the court found, that the prosecutor and his deputies are consulted by large numbers of people and the justice courts, which are located in Aberdeen and Hoquiam, together with state officers who maintain headquarters at Aberdeen for the Washington state patrol; that Mr. Krause divides his time between the Montesano office and the Aberdeen office. The court further found that the commissioners did not act arbitrarily or capriciously in allowing the claim against the county.

In his memorandum opinion, the trial judge stated that the public convenience was served by the maintenance of the office at Aberdeen, but that the commissioners lacked the power to provide a second office for the prosecutor outside the county seat.

There are three questions presented by this appeal. (1) Is the county auditor justified in refusing, or has she the power to refuse, to issue and deliver a warrant for a claim presented to, allowed, and ordered paid by the commissioners, on the ground that the board had no power to allow the claim? (2) Have the commissioners the power, either express or implied, to provide office space for the prosecuting attorney, at some point outside the county seat, and pay therefor from county funds? (3) May the commissioners rent office space outside the county seat for the prosecuting attorney, and pay therefor from county funds, when both the prosecutor and his deputies use such office for the purpose of conducting therein their private practice as well as the county business?

We are concerned herein primarily with an analysis of the power of the board of county commissioners and the auditor, and this necessitates an examination and consideration of a number of our statutes.

Rem. Rev. Stat., § 4086 [P. C. § 1624], defines certain duties of the county auditor, and particularly his duties relative to the auditing of claims. This section provides in part as follows:

"He shall audit all claims, demands and accounts against the county which by law are chargeable to said county, except such cost or fee bills as are by law to be examined or approved by some other judicial tribunal or officer. Such claims as it is his duty to audit shall be presented to the board of county commissioners for their examination and allowance. For claims allowed by the county commissioners, as also for cost bills and other lawful claims duly approved by the competent tribunal designated by law for their allowance, he shall draw a warrant on the county treasurer, made payable to the claimant or his order, bearing date from the time of and regularly numbered in the order of their issue, and he shall carefully keep proper warrant books, and when a warrant is issued the stub shall be carefully retained, upon which shall be recorded the number, date, name of payee, amount, nature of claims or services briefly stated and by whom allowed. . . ."

There have been a number of cases before this court, involving the powers and duties of the auditor relative to claims allowed and ordered paid by the county commissioners or some other quasi-judicial body.

We have held that a county auditor was merely a ministerial officer, in so far as his powers and duties were concerned, in regard to certain claims allowed and ordered paid by the commissioners or other quasi-judicial body. *American Bridge Co. v. Wheeler,* 35 Wash. 40, 76 Pac. 534; *State ex rel. Heglar v. Wheeler,* 146 Wash. 513, 263 Pac. 946. See, also, 20 C. J. S. 952, § 140.

However, in the cited cases, in holding that the auditor was a ministerial officer, we do not believe it

was the intention of this court to hold, nor do we believe the cases hold, that an auditor may never challenge the power of the commissioners to allow a claim. On the contrary, we are of the opinion that the cases recognize that a situation may arise where the auditor is authorized and justified in refusing to issue a warant on a claim approved and ordered paid by the commissioners. *Dillon v. Whatcom County,* 12 Wash. 391, 41 Pac. 174; *State ex rel. Sheehan v. Headlee,* 17 Wash. 637, 50 Pac. 493. We stated in the *Dillon* case, *supra:*

"The determination of the question whether a charge is a proper charge against the county is a legal proposition, and that of whether the employment of the service is necessary as a fact is entirely another proposition. The courts will determine the first but will not enter upon the investigation of the latter when the discretion has been submitted to another tribunal."

While we stated in the case of *State ex rel. Sheehan v. Headlee, supra:*

"It pretty conclusively appears from the statute in relation to the duties of the auditor, and from those in relation to the duties and powers of the board of county commissioners, that when the board has approved bills *which they have the legal right to approve,* it is the duty of the auditor, without further question, to issue the warrants for the same." (Italics ours.)

we also stated in the same case:

"If the board of county commissioners were acting outside of their jurisdiction, then it may be that the auditor would have a right to question their action and refuse to issue a warrant."

From the foregoing authorities, we conclude that, when a legal claim is allowed and ordered paid by the commissioners, acting within the scope of their authority, the county auditor is required to issue a warrant on such claim, and may not question the validity of the determination made by the board.

When the county commissioners, in the exercise of their discretion, have allowed a valid claim, neither the county auditor nor the courts, on an application for a writ of mandamus, will attempt to control such discretion, unless the action of the board is so capricious and arbitrary as to evidence a total failure to exercise discretion, and is, therefore, not a valid act. *Dillon v. Whatcom County, supra; State ex rel. Farmer v. Austin,* 186 Wash. 577, 59 P. (2d) 379. ·Where, however, the auditor is honestly of the opinion that the county commissioners have exceeded their authority in allowing a claim, he is, in our opinion, justified, and it is his duty, to refuse to issue the warrant, and, if necessary, to litigate the question. See *State ex rel. Egbert v. Blumberg,* 46 Wash. 270, 89 Pac. 708.

We believe the right of the auditor to question what he believes to be illegal claims allowed by the commissioners, finds expression in Rem. Rev. Stat., § 2381, which makes it a gross misdemeanor for any public officer, a part of whose duty it is to audit, allow, or pay, or take part in auditing, allowing, or paying claims or demands upon the state or county, city or town, to knowingly audit, allow, or pay, or, directly or indirectly, consent to, or in any way connive at, the auditing, allowance, or payment of any claim or demand against the state, county, town, or city, which is false or fraudulent or contains any charge, item, or claim which is false or fraudulent.

We are, therefore, of the opinion that the auditor was authorized to refuse to issue the warrant in this case, and to have the matter litigated on the question of whether or not the commissioners had exceeded their power in authorizing the expenditure of public funds for the maintenance of the Aberdeen office, she having raised this question by her return to the writ.

■ We now come to the question of whether or not the commissioners exceeded the powers vested in them. ·

Rem. Rev. Stat., § 4056 [P. C. § 1664], provides in part:

"The several boards of county commissioners are authorized and required,—

"5. To allow all accounts legally chargeable against such county not otherwise provided for, and to audit the accounts of all officers having the care, management, collection, or disbursement of any money belonging to the county or appropriated to its benefit;

"6. To have the care of the county property and the management of the county funds and business, and in the name of the county to prosecute and defend all actions for and against the county, and such other powers as are or may be conferred by law."

It is evident from the subsections of § 4056, *supra,* and other subsections not set out, that it was the intention of the legislature to confer wide powers on the commissioners, to the end that they might properly carry on the business of the county. It is evident, also, that, in the furtherance of the county business, there are many things which the commissioners must do, not specifically mentioned in the above section, but which may reasonably be implied therefrom.

It is a well-recognized principle that many of the acts of county commissioners require the exercise of discretion. It may be stated as the general rule that a board of county commissioners is a creature of the statute, and has only such powers as are expressly conferred upon it, or necessarily implied from those expressly given, or such as are requisite to the performance of the duties which are imposed on it by law. 14 Am. Jur. 200, § 28; 20 C. J. S. 849, § 82.

In *State ex rel. Whitney v. Friars,* 10 Wash. 348, 39 Pac. 104, we stated:

"The county commissioners are constituted by the law the guardians of the county and its business man-

agers, and while the power to appoint an agent is not expressly granted, the power which they do have under the law necessarily carries with it all the powers necessary to the proper exercise of the power granted."

We also stated in *State ex rel. Ross v. Headlee,* 22 Wash. 126, 60 Pac. 126, that the general powers of the county commissioners, under the statute, are extensive, and that the proper administration of the law intrusted to their care demands a liberal construction of their acts, to the end that substantial justice shall be attained. See, also, *State ex rel. Taylor v. Superior Court,* 2 Wn. (2d) 575, 98 P. (2d) 985.

In *Pacific Timber Cruising Co. v. Clarke County,* 233 Fed. 540, the court, in speaking of the power of county commissioners, stated:

"The county commissioners, being the administrative officers of the county (*Nelson v. Troy,* 11 Wash. 435, 39 Pac. 974), are given under section 3890, Remington & Ballinger's Codes of Washington, subd. 6, 'the care of county property and the management of the county funds and business, and in the name of the county to prosecute and defend all actions for and against the county, and such other powers as are or may be conferred by law.' The legislative policy of the state of Washington has been to allow the commissioners full scope in the administrative power, even though not expressly granted. *Whitney v. Friars,* 10 Wash. 348, 39 Pac. 104; *Williamson v. Snohomish County,* 64 Wash. 233, 116 Pac. 675."

The *Williamson* case referred to in the above quotation deals with the power of the commissioners to authorize the prosecuting attorney to employ an alienist, for a fee of one hundred dollars for the first day and fifty dollars for each day thereafter, in connection with the prosecution of a criminal case. The court held that the power of the commissioners to incur such expenses was clearly inferable from the statutory provisions, as was their authority in numerous other mat-

ters in which it was concluded they had such authority, though not specifically provided for by statute.

■■ In view of the particular question here involved, the maintenance of an office for the prosecutor at Aberdeen, it is necessary to consider some other statutes.

Rem. Rev. Stat., § 4032 [P. C. § 1667], provides as follows:

"The boards of county commissioners of the several counties of the state shall provide a suitable furnished office for each of the county officers in their respective courthouses."

Rem. Rev. Stat., § 4139 [P. C. § 1782], provides as follows:

"The prosecuting attorney of each county in the state of Washington must keep *an* office at the county seat of the county of which he is prosecuting attorney." (Italics ours.)

The commissioners in the instant case have complied with § 4032, *supra,* since there is an office in the courthouse at Montesano, and the prosecutor has complied with § 4139, *supra,* in that he or at least one of his deputies is in the office at Montesano at all times.

The question, then, is: Have the commissioners the power, either express or implied, to rent an additional office for the prosecuting attorney in Aberdeen?

We are inclined to the view that neither § 4032 nor § 4139, *supra,* can or should be construed as a limitation upon the powers of the commissioners. Since these statutes contain no express prohibition, it seems to us it is possible to argue that they are prohibitory only under the rule of express mention and implied exclusion. This rule should be applied only if and when it aids in determining legislative intent. We quote from Crawford, Statutory Construction, p. 336, § 195:

"In other words, the principle is to be used only as a means of ascertaining the legislative intent where it is doubtful, and not as a means of defeating the apparent intent of the legislature."

We do not believe the rule applicable to § 4032, *supra,* for, as we read that statute, it seems to us its purpose was to require the commissioners to provide at least one office for the county officials at the courthouse. It was to place a definite duty upon the commissioners, rather than to restrict the general powers possessed by the board.

We are also of the opinion that § 4139, *supra,* is mandatory only to the extent of requiring the prosecuting attorney to keep "an" office at the county seat. Likewise, this section, in our opinion, should not be construed as prohibiting the maintenance of an additional office elsewhere.

We believe our conclusion is substantiated by an examination of other statutes relating to some of the other county offices.

Rem. Rev. Stat., § 73 [P. C. § 8583-4], provides as follows:

"*The office* of the clerk of the superior court *shall* be kept at the county seat of the county of which he is clerk." (Italics ours.)

Rem. Rev. Stat., § 4110 [P. C. § 1823], provides that "the county treasurer shall keep *his office* at the seat of justice of his county. . . ." (Italics ours.)

Rem. Rev. Stat., § 4148 [P. C. § 1776], provides: "The county engineer shall keep *his office* at the county seat. . . ." (Italics ours.)

Rem. Rev. Stat., § 4158 [P. C. § 1804], provides: "The sheriff must keep *his office* at the county seat of the county of which he is sheriff." (Italics ours.)

It will be noted that, in all of the sections last above referred to, the legislature provided that the particular

county official must keep *"his office"* at the county seat, or, as in the case of the clerk, *"the office,"* while Rem. Rev. Stat., § 4139, provides that the prosecuting attorney must keep *"an office"* at the county seat.

We do not believe we are quibbling over the mere use of words when we call attention to the distinction above noted, and we are convinced that a different legislative intent is indicated by the use of the indefinite article "an," as applied to the office of the prosecuting attorney, rather than the more specific "his" or "the," as applied to the other officers above mentioned.

We therefore conclude that there is no statute expressly preventing or prohibiting the commissioners' from providing additional office space for the prosecuting attorney at some point other than the county seat. On the other hand, we find no express grant of authority to the commissioners to establish an additional office. Therefore, if the commissioners have such authority, it must be implied from the general grant of powers found in Rem. Rev. Stat., § 4056, above referred to.

As already noted, the commissioners are the managers of the county funds and business, and it is apparent, from the cases cited, that we have recognized that the board may expend county funds where it has determined such expenditure is necessary to carry on the county business, although the board is not expressly authorized to make such expenditure. And so in the instant case, there being no express prohibition against the commissioners' providing an additional office for the prosecuting attorney outside the county seat, and the commissioners, in their discretion, having determined that the maintenance of such an office was for the convenience and best interests of the county, it would seem they were merely fulfilling their statutory duty, as business managers of the county, in pro-

viding for such an office. In other words, it would seem that such power must be implied in this case, as in many others, if the commissioners are to effectually carry on the county business.

We can readily agree that, there being no express authorization for the commissioners to provide for an additional office outside the county seat, the power so to do could not be implied, where it appears that neither necessity nor the convenience of the public requires the establishing of such an office, or, in other words, where it appears that the commissioners have arbitrarily established such an office; but, in the instant case, it will be remembered that the court found that the board had not acted arbitrarily, and that the establishment of the office was a convenience to the majority of the people of the county.

Respondent contends that, if the prosecuting attorney is allowed to maintain an office at some point other than the county seat, other county officers will also attempt to avail themselves of this privilege, on the same grounds. Carrying this supposition to its logical conclusion, respondent argues that it might mean the removal of the county government from the county seat. We are unable to agree with this contention, first, because there is a check on the county commissioners, in that they must honestly exercise their discretion before they would be justified in providing an office at a point other than the county seat; and, second, by statute the county offices hereinbefore mentioned must of necessity be maintained at the county seat. We refer to the sections relative to the treasurer, clerk, sheriff, and engineer. We do not feel, therefore, that the maintenance of a second office for the prosecuting attorney, outside the county seat, under the circumstances shown herein, is any precedent for al-

lowing other county officers to have such an office provided.

While we appreciate the length to which this opinion has gone, there is a further factor in this case which, in our opinion, is of sufficient importance to merit our discussion.

It appears from the testimony of Mr. Krause and Mr. Manley, and the court so found, that the Aberdeen office is to some extent used by both the prosecutor and his deputy for carrying on such private practice as they may have, as well as for county business. The court further found, however, that the county business was in no way neglected by either Mr. Krause or his deputy by their private practice. While Mr. Krause testified that from eighty to ninety per cent of his time was taken up with county business, we assume from the argument of respondent that it would make no difference whether the volume of private practice of the prosecutor was great or small; that in no event would the commissioners be authorized to expend public funds for the maintenance of an office for the prosecutor, where such office was used for private practice.

While the contention made by respondent applied only to the Aberdeen office, it must follow that, if this element enters into the situation of the Aberdeen office, it must also apply to any office provided by the county for the prosecutor.

Respondent argues that Rem. Rev. Stat., § 2334 [P. C. § 9061], is an expression of general public policy, indicating the legislature's desire to prohibit public officers from benefiting by reason of their office, by making certain specific acts gross misdemeanors. Respondent further argues that the policy expressed in the above statute should be applied in this case, contending that the prosecuting attorney and his deputy are actually profiting personally from the

use of county property, i. e., the use of the Aberdeen office for private law practice.

If respondent's contention is well founded, then it must follow that the commissioners would not be justified in expending county funds for the maintenance of any office for a prosecuting attorney, where the prosecutor carried on any private practice in such office. We do not feel that the public policy expressed in § 2334, *supra,* should be applied here. If recognition of a course of conduct is to be considered in the interpretation of a statute, then certainly it can be argued that it has for so long been the practice of prosecuting attorneys to carry on, in the office provided by the county for their official business, what private practice they may have, and such practice is so well known, that it is reasonable to assume that the legislature must have known of such practice, and if it had been the desire or intent of the legislature to prohibit such practice, it would have specifically so provided.

That it was not the intent of the legislature to prohibit prosecuting attorneys from engaging in certain types of private practice, is evident from Rem. Rev. Stat., § 4138 [P. C. § 1792], which provides:

"No prosecuting attorney shall receive any fee or reward from any person, on behalf of any prosecution, for any of his official services, except as provided in this chapter, nor shall he be engaged as attorney or council for a party in any civil action [or for] a party to any criminal proceedings depending upon the same facts as such criminal [civil] proceedings."

We find almost the same provision in § 2164 of the 1881 Code of Washington.

As we have stated, in view of the fact that the above section has been in effect for so many years, it is impossible to escape the conclusion that the legislature

has approved of a prosecuting attorney's engaging in private practice, so long as such practice does not conflict with the duties imposed upon him as prosecuting attorney.

As a practical proposition, it is generally recognized that, in the smaller counties at least, because of the low salaries paid, it would be practically impossible to procure a prosecutor, if he were not permitted to supplement his office salary by private practice.

Our conclusion in regard to prosecutors engaging in private practice, and our conclusion as to the practical reasons for allowing them to engage in such practice, are borne out, we think, by certain acts passed by the 1941 legislature.

Rem. Supp. 1941, § 4139-1, provides as follows:

"Neither Prosecuting Attorneys of class A counties and counties of the first class nor their deputies shall engage in the private practice of law."

Rem. Supp. 1941, § 4201a, provides:

"The salaries of Prosecuting Attorneys in class A counties and counties of the first class shall be as follows: Class A counties, fifty-five hundred dollars ($5500) per year; counties of the first class, forty-eight hundred dollars ($4800) per year."

The last two sections above referred to do not become operative until the term of office commencing the second Monday in January, 1943.

It will be noticed that by § 4201a, *supra*, the salaries of prosecuting attorneys of class A counties are raised from thirty-six hundred dollars a year to fifty-five hundred dollars a year, and in first class counties, from three thousand dollars a year to forty-eight hundred dollars a year.

Conceding, then, that a prosecuting attorney may engage in private practice, and that the commissioners have the implied power to expend county funds for

the maintenance of an office for the prosecutor outside the county seat, we are of the opinion that it logically follows, and that it is desirable, that the prosecutor conduct such private practice as he may have, in the office provided by the county for his official business.

As long as the legislature recognizes the propriety of a prosecuting attorney engaging in private practice, we are of the opinion it is fair to assume the legislature has recognized that such private practice would be conducted in the office provided for his official duties, and that such private practice does not make illegal the expenditure of county funds for the maintenance of the prosecutor's office.

We may add that it undoubtedly has been recognized that it is a distinct advantage to the county to have the prosecuting attorney spend all of his time in the office provided for his official business, rather than have him spend part of his time in another office, where he would be compelled to go in order to conduct his private practice.

We conclude, therefore, that the commissioners acted within their power and violated no statute by expending county funds for the maintenance of the office at Aberdeen.

The judgment is reversed, with directions to the trial court to issue the writ as prayed for.

SIMPSON, C. J., BEALS, STEINERT, ROBINSON, and GRADY, JJ., concur.

MILLARD, J. (dissenting)—The statutes cited by the majority declare the public policy of this state which, in my view, the opinion obviously contravenes. The statutes clearly disclose the legislative intent that the business of the county shall be conducted, and that the offices of the county shall be maintained, at the county

358

seat. While a prosecuting attorney in his private practice of the law may maintain a private office in as many places as he deems advisable, it is unthinkable that he may be permitted, as the majority opinion in effect holds, to do so at the expense of the taxpayers.

BLAKE and MALLERY, JJ., concur with MILLARD, J.