[No. 74325-8. En Banc.]
Argued February 10, 2004. Decided May 13, 2004.

FRED R. STAPLES, *Appellant*, v. BENTON COUNTY, *Respondent*.

*Fred R. Staples*, pro se.

*Andrew K. Miller, Prosecuting Attorney*, and *Ryan K. Brown, Deputy*, for respondent.

*Sophia R. Byrd* on behalf of Washington State Association of Counties, amicus curiae.

---

JOHNSON, J. — This case involves a claim brought by former Superior Court Judge Fred R. Staples, who is seeking a judicial determination that Benton County has unlawfully moved certain offices of county government from the city of Prosser to the city of Kennewick in violation of article XI, section 2 of the Washington State Constitution. Staples filed a petition for writ of mandamus with the trial court, directing the county commissioner to move the county offices that are located at the justice center in Kennewick back to the county seat in Prosser. The trial court held there was no state constitutional violation and dismissed Staples' petition. We affirm and hold that a writ of mandamus is not an available remedy in this case.

## FACTUAL AND PROCEDURAL HISTORY

Since 1905, the city of Prosser has been the county seat of Benton County. In 1926, the Benton County courthouse was erected in Prosser and has been maintained and expanded since that date. In 1980, we approved an order entered at the request of Benton County Superior Court judges who sought permission to conduct trial court proceedings outside the county seat of Prosser in conjunction with the construction of a new justice center in Kennewick. Clerk's Papers (CP) at 60. The order authorized the Benton County

Superior Court to exercise its discretion to hold sessions at the justice center upon the facility's completion.[1]

On February 3, 2003, Staples filed a petition for writ of mandamus in the Benton County Superior Court to compel Benton County to move its offices of county government from the justice center in Kennewick back to the county seat in Prosser. CP at 7. He named the county and three members of the county's board of commissioners as defendants. CP at 87, 89. Staples contends that these parties have removed the county seat in violation of article XI, section 2 of the Washington State Constitution by maintaining the law and justice functions of county government in Kennewick. CP at 7. The provision states that:

> No county seat shall be removed unless three-fifths of the qualified electors of the county, voting on the proposition at a general election shall vote in favor of such removal, and three-fifths of all votes cast on the proposition shall be required to relocate a county seat. A proposition of removal shall not be submitted in the same county more than once in four years.

CONST. art. XI, § 2.

In June 2003, the parties filed cross-motions for summary judgment. The trial court entered an order denying Staples' cross-motion for summary judgment, granting the county's cross-motion for summary judgment, and dismissing Staples' petition for writ of mandamus.

We granted direct review of the trial court's decision. Staples maintains that certain functions of county government, particularly the law and justice functions,[2] have

---

[1] The order provided that:

[T]he Superior Court for Benton and Franklin counties is authorized to use its discretion to hold court in any appropriate location in its judicial district during the construction of the Justice Center in Kennewick and the reconstruction, rehabilitation and expansion of the courthouse in Prosser . . . [and that] upon the completion of the Prosser and Kennewick court facilities the Superior Court for Benton and Franklin counties is authorized under its discretion to hold court in those facilities.

CP at 60, 61.

[2] For example, the juvenile court, superior court, and county jail are maintained at the justice center in Kennewick, as are offices for the county clerk, prosecutor, and sheriff.

operated outside the county seat of Prosser for the last 20 years in violation of article XI, section 2. Statement for Direct Review at 1. Staples specifically seeks a writ of mandamus compelling the county to move the county offices of government from the justice center in Kennewick back to the county seat in Prosser. Appellant's Br. at 7.

The issues we must resolve, then, are (1) whether Benton County maintains certain offices of county government at the justice center in Kennewick in violation of article XI, section 2; and (2) whether a writ of mandamus is an available remedy in this case.

## ANALYSIS

 Mandamus is an extraordinary writ, the issuance of which is not mandatory, even in response to allegations of constitutional violations. *See Walker v. Munro*, 124 Wn.2d 402, 407, 879 P.2d 920 (1994). We have nonexclusive and discretionary jurisdiction to issue a writ of mandamus. CONST. art. IV, § 4. We will issue a writ of mandamus only in cases where there is no plain, speedy, and adequate remedy at law. RCW 7.16.170. For example, we will issue a writ of mandamus to compel the performance of an act or duty expressly required by law. *Cedar County Comm. v. Munro*, 134 Wn.2d 377, 380-81, 950 P.2d 446 (1998).

Staples seeks a writ of mandamus against the county and three members of its board of commissioners to compel the county to move its offices of county government from the justice center in Kennewick back to the county seat in Prosser.[3] Staples contends that, by maintaining the law and justice functions of government at the justice center, the county has shifted the county seat from Prosser to Kennewick in violation of article XI, section 2.

---

[3] Staples named only these parties as defendants. No other county official was named as a defendant despite the fact that Staples seeks a writ of mandamus to move "all" functions of county government back to the county seat in Prosser. CP at 94. For instance, Staples maintains that no judge who has served on the superior court since the justice center opened in Kennewick holds sessions at the county seat in Prosser, yet Staples does not name any of the current superior court judges as defendants. CP at 82.

■ The problem with Staples' argument is that the record reflects that the offices of county government are still located in Prosser. The county seat itself has not moved. Rather, portions of, if not the majority of, the law and justice functions of government have been established outside Prosser at the justice center in Kennewick. The county seat consists of more than just the law and justice functions of government. Also, the record establishes that county officials consider Prosser as the county seat.[4] As such, the wholesale removal of all the functions of county government has not occurred that would involve the requirements of article XI, section 2.

No constitutional provision exists that prevents counties from locating government offices outside a county seat. The location of county offices is governed by various statutes.[5] Staples does not base his petition for writ of mandamus on the violation of these statutes, but on a violation of article XI, section 2.

---

[4] When Benton County was established in 1905, the legislature designated Prosser as the county seat. *See* LAWS OF 1905, ch. 89, § 7, at 188. Article II, section 28(18) governs the process of designating county seats of new counties that were formed after the adoption of our state constitution in 1889. The provision states that "[t]he legislature is prohibited from enacting any private or special laws . . . locating [ ] county seats, provided, this shall not be construed to apply to the creation of new counties." Counties existing at the time of the adoption of our state constitution were recognized as counties under article XI, section 1. The county seats of those already existing counties were chosen by the electorate. *See* LAWS OF 1887-88, ch. 34, at 68-70.

[5] For instance, the legislature has adopted the following statutes specifically mandating the location of certain offices of county government: RCW 36.16.090 (requiring county commissioners to provide offices for each of the county officers in their respective courthouses); RCW 36.23.080 (requiring that the county clerk maintain an office at the county seat); RCW 36.27.070 (requiring the county prosecutor to maintain an office at the county seat); RCW 36.28.160 (requiring the county sheriff to maintain an office at the county seat); RCW 36.29.170 (requiring the county treasurer to maintain an office at the county seat); RCW 36.32.080 (requiring the county legislative authority of each county to hold regular meetings at the county seat); RCW 36.80.015 (requiring the county road engineer to maintain an office at the county seat); RCW 2.08.030 (allowing superior courts to hold their sessions at the county seats of the several counties, and at other places within the county as are designated by the judge or judges thereof with the approval of the chief justice of the supreme court of this state); and CR 77(f) (requiring the superior court to hold regular and special sessions at the county seats of the several counties at such times as the judges may determine, and at other places within the county as are designated by the judge or judges thereof with the approval of the chief justice of the supreme court of this state).

We first recognized that the location of county offices is controlled by statutes and not article XI, section 2, or any other provision of the Washington State Constitution, in *State ex rel. Becker v. Wiley*, 16 Wn.2d 340, 133 P.2d 507 (1943). In *Wiley*, 16 Wn.2d 340, we held that county commissioners and the prosecuting attorney are within their statutory authority to maintain offices outside the county seat. In doing so, we analyzed the law pertaining to the location of county offices and did not refer to article XI, section 2 of the Washington State Constitution.

This approach is also consistent with our most recent decision in *Thurston County ex rel. Bd. of County Comm'rs v. City of Olympia*, 151 Wn.2d 171, 86 P.3d 151 (2004). In that case, Thurston County wanted to move its entire superior court functions outside the county seat of Olympia to the city of Tumwater, which would have violated RCW 2.08.030.[6] We held that the county cannot legally move its courts and other law and justice facilities outside the county seat of Olympia because statutory authority requires certain offices of county government to be located "at the county seat," which means "in" the county seat. No constitutional authority precludes offices of county government from being located at other locations in addition to the county seat.

Accordingly, Staples' reliance on article XI, section 2 is misplaced. Article XI, section 2 does not restrict the county from maintaining certain offices of government outside a county seat. Rather, the provision specifies the process for formally changing a county seat designation.

Notwithstanding, Staples relies on our holding in *State ex rel. Lemon v. Langlie*, 45 Wn.2d 82, 273 P.2d 464 (1954), to support his argument. In *Lemon*, 45 Wn.2d at 110-11, we

---

[6] The statute states that "[the superior courts] shall hold their sessions at the county seats of the several counties, respectively, and at such other places within the county as are designated by the judge or judges thereof with the approval of the chief justice of the supreme court of this state and of the governing body of the county . . . [and] shall hold regular and special sessions in the several counties of this state at such times as may be prescribed by the judge or judges thereof." RCW 2.08.030.

granted a petition for a writ of mandamus compelling 13 state executive officers to move their offices from Seattle to Olympia. In doing so, we stated that "it was the intention of the framers of our state constitution and of the people in adopting it to provide that the whole of the executive department of the state should be located and maintained at the seat of government." *Lemon*, 45 Wn.2d at 99. Our holding and reasoning were based on the language of article III, section 24, which specifies the required location of offices for certain state officials, and not article XI, section 2.[7]

The framers of our state constitution did not adopt a comparable provision for the location of offices for county officials, nor do we find a constitutional provision which prevents the county from siting government offices at locations in addition to the county seat. We find, then, that the framers did not intend to impose a constitutional duty on county officers regarding the location of their offices. Thus, no constitutional basis exists to support issuing a writ of mandamus.

The decision of the trial court is affirmed.

MADSEN, IRELAND, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

ALEXANDER, C.J. (concurring) — I agree with the majority that the appellant, Fred Staples, has not established that there has been a "wholesale removal of all the functions of county government" out of Prosser, the county seat of Benton County. Majority at 465. Because that is the underpinning of his claim for a writ of mandamus, it is proper for us to conclude that Benton County has not violated article XI, section 2 of the state constitution, which indicates that

---

[7] The provision states that "[t]he governor, secretary of state, treasurer, auditor . . . shall severally keep the public records, books and papers relating to their respective offices, at the seat of government, at which place also the governor, secretary of state, treasurer and auditor shall reside." CONST. art. III, § 24.

[n]o county seat shall be removed unless three-fifths of the qualified electors of the county, voting on the proposition at a general election shall vote in favor of such removal, and three-fifths of all votes cast on the proposition shall be required to relocate a county seat. A proposition of removal shall not be submitted in the same county more than once in four years.

Therefore a writ of mandamus should not issue.

I write separately, however, to express concern over the fact that the record contains a strong indication that at least some of the offices that, according to statute, are to be maintained at the county seat of Prosser, have been moved out of that city to Kennewick, another city in Benton County. In making this point, I will limit my discussion to an office that is of particular concern to me, the superior court for Benton County.

As the majority observes, RCW 2.08.030 provides that superior courts "shall hold their sessions at the county seats of the several counties" and at such other places in the county as are designated by the judges of that court "with the approval of the chief justice of the supreme court of this state and of the governing body of the county." The plain meaning of this statute is that the superior court must have a bona fide presence at the county seat, even though it may hold sessions at other places in the county at the direction of the judges of that court, provided the governing body of the county and the chief justice of the state supreme court approve.[8] Consistent with that interpretation, we recently held that the entirety of the Thurston County Superior Court could not be moved out of Olympia, the county seat of Thurston County. *Thurston County ex rel. Bd. of County Comm'rs v. City of Olympia*, 151 Wn.2d 171, 86 P.3d 151 (2004). We held there that transferring the entire court

---

[8] CR 77(f) is similar to RCW 2.08.030 and provides, in pertinent part, as follows:

"**(f) Sessions.** The superior court shall hold regular and special sessions at the county seats of the several counties at such times as the judges may determine and at such other places within the county as are designated by the judge or judges thereof with the approval of the chief justice of the supreme court of this state and of the governing body of the county."

operation to an adjoining city was not equivalent to having the court "at the county seat."

In 1980, all of the then members of this court, including the then chief justice, signed an order authorizing the Benton/Franklin County Superior Court to hold court sessions in locations other than the county seat of Prosser.[9] The preamble to this order set forth the court's understanding that the existing county courthouse in Prosser was to be rehabilitated and expanded and that a justice center was to be constructed in Kennewick. The court then went on to order that "upon the completion of the Prosser and Kennewick court facilities the Superior Court for Benton and Franklin Counties is authorized under its discretion to hold court in those facilities." Clerk's Papers at 61. The only reasonable interpretation of this order, particularly in light of RCW 2.08.030, is that following completion of the aforementioned construction projects, the superior court could hold sessions in Kennewick, Pasco, *and* Prosser.[10] The order did not, however, authorize the court to conduct all of its Benton County sessions in Kennewick.

Mr. Staples suggests in his brief that the superior court functions which take place at the county seat of Prosser are few and far between and that these functions are entirely ancillary to the functions that take place in Kennewick rather than the other way around. Staples asserts that in reality "the entire superior court" of Benton County has moved out of Prosser to Kennewick.[11] Br. of Appellant at 5. If that is the case, then it would appear that the language

---

[9] Benton County is in a joint judicial district with Franklin County. Therefore, the judges of the Benton/Franklin County Superior Court wear two hats in the sense that each judge of the joint judicial district is a judge of the Franklin County Superior Court when holding court in that county and a judge of the Benton County Superior Court when holding court in that county.

[10] Pasco is the county seat of Franklin County.

[11] In support of his assertion, Mr. Staples indicates that not one of the five superior court judges has a chambers in Prosser. He also states that in a 20-year period the total judge days spent in Prosser by the entire Benton/Franklin County Superior Court bench is less than 35 with only one jury trial having been scheduled there during that period. The county does not substantially refute these assertions.

of RCW 2.08.030 and the spirit of the order that was approved and signed by the justices of this court and its chief justice are not being fully respected. Although the current court and its chief justice have not been asked to rescind or modify the order, I must observe that any judicial officer would be loathe to approve an order that would subtract from the requirements of RCW 2.08.030, or the language of the earlier order of this court, which envisioned the superior court of Benton County having a real presence at Prosser, the county seat.

Having made these observations, I quickly add that the violation of RCW 2.08.030 and other statutes relating to the location of various county offices is not the basis on which petitioner sought a writ of mandamus. Neither has petitioner joined parties who would be indispensable to the determination of an action based on the violation of such statutes. Because we can rule on the case only as it has been presented to us, I join in the result that the majority reaches, notwithstanding the concerns I have noted above.

SANDERS and FAIRHURST, JJ., concur with ALEXANDER, C.J.

Reconsideration denied July 19, 2004.