[No. 30610. Department Two. November 1, 1948.]

THE STATE OF WASHINGTON, on the Relation of F. Stanley
Piper et al., Appellants, v. WILL D. PRATT, as Auditor of
Whatcom County, Respondent.[1]

[1]Reported in 198 P. (2d) 814.

*Lloyd L. Wiehl,* for appellants.

*Boone Hardin* and *Tom A. Durham,* for respondent.

*Lundin & Barto, amicus curiae* on behalf of appellants.

*J. W. Kindall, Lester C. Voris, Burton Kingsbury, T. B. Asmundson,* and *Bruce Rinker, amici curiae* on behalf of respondent.

MALLERY, C. J.—At the general election held on November 7, 1944, Whatcom county voted to issue $800,000 in bonds for the erection of a courthouse. The moneys derived from their sale were placed in the courthouse building fund. Approximately $80,000 was used for the purchase of a site for the courthouse, which left approximately $720,000 for construction purposes.

The county commissioners entered into a contract with the relators, which provided for the payment to them of six per cent of the cost of building the courthouse as architects' fees. The contract recited:

"That whereas the owner intends to erect a courthouse building for Whatcom County, Washington, to be located on block 12 in Bellingham, Whatcom County, Washington, at an approximate cost of $600,000, now therefore, etc."

The relators agreed to render the following services:

"(1) The Architect's services.—The Architect's professional services consist of the necessary conferences, the preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings; the drafting of forms of proposals and contracts; the issuance of certificates of payment; the keeping of accounts, the general administration of the business and supervision of the work."

Pursuant to this contract, the relators prepared blueprints for a courthouse at the estimated cost of $1,400,000. These blueprints, upon being submitted to the Washington state

development board, were the basis for a building grant by the state to Whatcom county of $328,963.56, which was placed in the courthouse building fund of the county. Before the work of preparing the blueprints had been completed, the relators claim the contract was modified by the mutual consent of the parties by striking from the contract the clause: "at an approximate cost of $600,000."

We will assume that this was effective, because, in the light of our decision, it is immaterial whether it was or not. The county commissioners approved a voucher in the amount of $74,500 as a payment to the relators. However, the auditor of Whatcom county refused to issue a warrant pursuant thereto, whereupon, the relators brought an action in the superior court of Whatcom county for a writ of mandamus to compel him to do so. The court sustained the position of the county auditor and dismissed the action. This appeal followed.

The county auditor had shown cause why the warrant should not issue upon the ground, among others, that the amount of money in the fund was less than the estimated building cost of $1,400,000. Even with the aid of the grant from the state, the county could not incur the remainder of the cost without exceeding the constitutional limit of indebtedness of the county as prescribed by Art. VIII, § 6, of the Washington state constitution, and Rem. Rev. Stat., § 5575 [P.P.C. § 808-11].

It is conceded by all of the parties that the county cannot incur, at this time, an indebtedness sufficient to permit the construction of a courthouse for the amount estimated by the appellants.

Both parties discuss the duty of the county auditor as to issuance of warrants on vouchers executed by the county commissioners. In *State ex rel. Becker v. Wiley*, 16 Wn. (2d) 340, 133 P. (2d) 507, this court reviewed its previous decisions upon the question, and the law is now reasonably certain that the county auditor may not question the act of the commissioners when they act within the scope of their statutory authority in exercising the discretion

vested in them. It is his duty, however, to refuse to issue a warrant where he believes that the county commissioners have violated the law by exceeding their authority. Thus, he may question the legality of their acts but not their exercise of discretion. We, therefore, resolve the contentions of both parties concerning the propriety and form of this action by holding that it was properly brought and properly defended.

Our substantive question is: Was the act of the county commissioners legal in issuing the voucher for payment to the appellants?

The county commissioners cannot incur an indebtedness to build a courthouse in excess of that permitted by law, and it is conceded that the amount required to build the contemplated courthouse would require funds, in addition to what is now in the courthouse building fund, which, if provided by the county, would raise its debt beyond the limits of the constitution and statute.

The appellants insist that this action is simply to require the auditor to issue the warrant for services rendered in an amount which, in itself, does not exceed the debt limitation. They urge upon us the proposition that the county has derived some benefit from the labor, even before construction can be started, in that the grant from the state could not have been obtained without it. This may be admitted, but every act done by county commissioners, if it is to be legal, must be pursuant to authority conferred upon them by statute. 14 Am. Jur. 200, § 28; *State ex rel. Becker v. Wiley*, 16 Wn. (2d) 340, 133 P. (2d) 507.

Rem. Supp. 1947, § 4056, gives county commissioners the power to provide for the erection and repairing of courthouses, but it does not give them the power to procure architects' services such as are here in question unless they are incident to, and in furtherance of, the exercise of their power in erecting a courthouse. The answer to this theory of appellants' case is that they have no power whatever to contract for such architect's services if we treat the services, as appellants suggest, as having no connection with the project for a completed courthouse.

■ Appellants, however, make the further contention that the services rendered may properly be considered as incident to the erection of a courthouse; and the fact that the courthouse cannot be built from funds presently available is not fatal to their claim, because it might be possible to construct the courthouse and make use of the present plans on a "piece-meal" basis through future years without exceeding the debt limitation. The answer to this is that we find nothing in the record about any "piece-meal" plan of construction contemplated by the commissioners or anyone else. We cannot predicate a decision upon a mere theory which is devoid of supporting facts.

■ The basic fact in this case is that the county commissioners did not have authority to secure the services herein rendered in aid of building a courthouse that would cost an amount in excess of the public debt that could be constitutionally incurred. It is immaterial whether the contract had in it the clause calling for a building at the estimated cost of $600,000 or not. For, even though no amount was inserted in the contract, still the appellants were put upon notice of the commissioners' statutory authority and knew that they could not build a building for $1,400,000. The contract, if treated as for a building to cost $1,400,000, was therefore *ultra vires,* and the appellants performed their labors at their peril. See *Stoddard v. King County,* 22 Wn. (2d) 868, 158 P. (2d) 78; *Green v. Okanogan County,* 60 Wash. 309, 111 Pac. 226, 114 Pac. 457; and *Northwestern Imp. Co. v. McNeil,* 100 Wash. 22, 170 Pac. 338.

■ On the other hand, if the contract be treated as one for the building of a courthouse for an amount within their power to build, then the appellants have not performed their contract in submitting plans for a building at an estimated cost that was beyond it. The trial court was, therefore, correct in refusing to require the county auditor to issue the warrant.

The respondent in this case urges that we hold that the contract was illegal and void for all purposes. It is not

necessary that we pass upon this contention. There may have been a time when a county could know definitely what kind of a building it would be possible to build in the light of such a debt limitation as is here in question, but, in these days, the possibility of state and Federal grants in aid of and in addition to money raised by the county puts the proposition in the realm of speculation. We are, therefore, not called upon to say what course should be followed if in the future it becomes possible to build the courthouse. It is enough to say that it cannot be done now.

The judgment is affirmed.

ROBINSON, SCHWELLENBACH, and HILL, JJ., concur.

SIMPSON, J., dissents.