[No. 31659. Department One. September 6, 1951.]

WILLIS T. BATCHELLER et al., Appellants, v. THE TOWN OF WESTPORT, Respondent and Cross-appellant.[1]

[1]Reported in 235 P. (2d) 471.

*Wettrick, Flood & O'Brien,* for appellants.

*Weter, Roberts & Shefelman, James Gay,* and *John E. Close,* for respondent and cross-appellant.

DONWORTH, J.—Plaintiffs brought this action to recover for engineering services rendered defendant under a contract of employment. Defendant cross-complained, seeking recovery of $12,750 paid to plaintiffs under the contract, alleging that such services as were rendered by plaintiffs were valueless. The action was tried to the court. At the conclusion of the testimony, the trial court took the case under advisement and thereafter filed its memorandum decision in which it held that plaintiffs' complaint and defendant's cross-complaint should both be dismissed. Findings of fact and conclusions of law were entered accordingly. Plaintiffs moved for judgment notwithstanding the oral decision of the court or, in the alternative, for a new trial. The court denied the motion and entered judgment dismissing both the complaint and the cross-complaint.

Plaintiffs and defendant respectively appeal from that portion of the judgment adverse to each.

Appellants are Willis T. Batcheller, a registered civil and electrical engineer, and Willis T. Batcheller, Inc., a corporation controlled by Batcheller. Respondent and cross-appellant is the town of Westport, a municipal corporation of the state of Washington (herein called the town).

In 1945, the citizens of Westport were desirous of obtaining an adequate water supply and for that purpose appointed a committee representing the town council. On January 17, 1946, two members of the committee called on Arthur Garton, the then director of conservation and development, in Olympia, asking for suggestions as to whom to consult for engineering and financial advice. Batcheller, whose office was in Seattle, chanced to be in Olympia that day. Mr. Garton located Batcheller there and introduced him to the members of the committee.

Batcheller told the committee of his experience and qualifications, and a general discussion of the proposed project ensued. As a result, Batcheller went to Westport February 1, 1946, and rendered a verbal report to the town council consisting of his preliminary ideas as to the proposed water system. While there, he interviewed members of the town government and managers and proprietors of the town's main industries. On February 4, 1946, the town formally employed Batcheller by passing resolution No. 126, which he drafted. It will be set out in full later in this opinion.

To attempt to describe in detail all of the services rendered by appellants between February 4, 1946, and October 16, 1947, when they were discharged by resolution No. 153, would unduly extend this opinion and serve no useful purpose. Suffice it to say that Batcheller devoted practically his entire time during that period of nearly twenty-one months to serving the town in planning and financing the proposed water system. These services were of substantial character and resulted in the town's ultimately obtaining $150,000 from the state for the construction of the project and $12,750 from the Federal works agency for preliminary planning. This latter sum was paid by the town to appellant

in partial satisfaction of his compensation under resolution No. 126.

The principal issue presented is whether the town had the legal right to discharge appellants by resolution No. 153 without liability for compensation for their services.

The trial court found the facts involved in this issue to be as follows:

"III

"That on the 4th day of February, 1946, the defendant, by its Resolution No. 126, duly adopted by the Town Council of the defendant and approved by the Mayor of the defendant, employed plaintiff, Willis T. Batcheller to take charge of the engineering work in connection with certain water works improvements, additions, and completion work, as more fully set forth in said Resolution 126, a true and correct copy of which is marked Exhibit A, attached to the Complaint of plaintiffs herein, and by this reference is also made a part hereof as though fully set forth herein, it being understood and agreed that payment of plaintiffs' compensation was contingent upon their completing plans and specifications, which would enable defendant to construct a satisfactory water system in accordance with said plans and specifications within the funds available to defendant, plaintiffs also to furnish supervision and inspection of construction.

"IV

"That pursuant to said employment said Willis T. Batcheller made preliminary surveys and investigations of the sources of water supply, prepared a cost estimate and preliminary report on the project, aided in obtaining from the State of Washington for the defendant's use in the construction of said improvements the sum of $150,000.00 and from the Federal Works Agency the sum of $12,750.00 to be used for preliminary engineering which latter sum was paid over to plaintiffs, prepared plans and specifications for the project on which bids were called on June 14, 1947 and again on June 28, 1947, did some engineering work on the ground, conferred with various bond houses with reference to financing the project, and endeavored to secure bids upon the project.

"V

"That the plaintiffs' final total estimated cost of the project was the sum of $300,000.00, and the total amount of funds available to the defendant for the construction of said minicipal water system, for all purposes, including engineer-

ing fees, legal fees, administrative expenses, rights of way, interest during construction, bond discount and contingencies, was $150,000.00 by a grant of the State of Washington and the proceeds of the sale of $175,000.00 par value of bonds approved at a bond election. That the amount which could be so raised would be somewhat less than $325,000.00 because the bonds would have to be sold at a discount.

"VI

"That no bid was received for the construction of the entire project. That bids were received for construction of various parts of the project with no bids on a few portions thereof. That acceptance of the lowest bids received on the various portions of the project would indicate a total construction cost of at least $424,095.69, to which would have to be added an estimated sum of $34,973.00 to cover State sales tax, acquisition of rights of way, legal fees, printing and advertising, interest during construction and bond discount, or a total of $459,068.69. That such total cost does not include plaintiffs' engineering fees. That including engineering fees the total cost of the project under said bids would have been approximately $500,000.00.

"VII

"That the officials of the defendant Town at regular Council meetings and at other times repeatedly orally requested and urged plaintiffs to revise the plans and specifications so that a satisfactory water system could be built within the available funds. That plaintiffs entered into negitiations with the bidders on some items and with others who had never bid, and proposed some eliminations and changes in the plans, but plaintiffs wholly failed and neglected to prepare plans and specifications upon which acceptable bids could be made so that the project could be completed within the available funds.

"VIII

"That there was never any determination of a satisfactory dam site by borings or other investigation to determine porosity. That no dam site or rights of way were acquired nor the cost thereof shown. That the construction costs of the proposed dam was not determined. That the water supply under plaintiffs' plans was not adequate or suitable.

"IX

"That the system as planned by plaintiffs could not be built within the funds available or within the ability of the defendant Town to finance.

"X

"That for the foregoing reasons the defendant Town elected to rescind and terminate its contract with plaintiffs by resolution of the Town Council regularly passed and approved by the Mayor on October 16, 1947, the same being Resolution No. 153, a true and correct copy of which is attached to the Answer and Cross-Complaint, marked 'Exhibit 1', and by this reference incorporated herein. That notice of said rescission and termination and a copy of said Resolution was duly given to plaintiffs.

"XI

"That on the 15th day of November, 1947, plaintiffs presented their duly executed claim for damages in the sum of $20,000.00 to the Town Council of the defendant; that the defendant did not take any formal action on said claim and more than 60 days elapsed between the presentation of said claim and the commencement of the within action.

"XII

"That plaintiffs put forth considerable effort in procuring the State grant of $150,000.00 and the $12,750.00 from the Federal Works Agency. That the Court is unable to determine any figure to compensate plaintiffs for such effort and labor less than the full amount of $12,750.00 received by them."

The trial court, in its conclusions of law, stated:

"I

"That plaintiffs failed to perform their contract with the defendant Town, by reason of which defendant Town was legally entitled to and did duly rescind said contract.

"II

"That plaintiffs' Complaint should be dismissed with prejudice.

"III

"That defendant's Cross-Complaint should be dismissed with prejudice.

"IV

"That defendant Town should have judgment against plaintiffs for its costs and disbursements herein to be taxed."

. Appellants' ten assignments of error are stated in their brief as follows:

"1. The court erred in making and entering its Findings of Fact No. 3 wherein it found that plaintiffs' compensation was contingent upon completing plans and the construction of a water system within the funds available to defendant.

"2. The court erred in making and entering its Findings of Fact No. 5 wherein the court found that plaintiffs' Final total estimated cost was the sum of $300,000.00.

"3. The court erred in making and entering its Findings of Fact No. 6 where the court computed the total cost of bids submitted, added other costs, and arrived at a total estimated cost of approximately $500,000.00 for the project.

"4. The court erred in making and entering its Findings of Fact No. 7 wherein the court found failure and neglect upon the part of the plaintiffs.

"5. The court erred in making and entering its Findings of Fact No. 8 wherein the court made findings in reference to the damsite and water supply and the construction costs.

"6. The court erred in making and entering its Findings of Fact No. 9 wherein the court found that the system planned by plaintiffs could not be built within the funds available or within the ability of the defendant.

"7. The court erred in making and entering its Conclusions of Law No. 1.

"8. The court erred in making and entering its Conclusions of Law No. 2.

"9. The court erred in making and entering its order denying the motion for judgment notwithstanding oral decision of the court and the motion, in the alternative, for a new trial.

"10. The court erred in entering judgment dismissing plaintiffs' complaint with prejudice and with costs."

The last four assignments of error are dependent upon the first six and may be considered accordingly.

The portion of findings of fact No. III, assigned as error by appellants, is as follows:

" . . . it being understood and agreed that payment of plaintiffs' compensation was contingent upon their completing plans and specifications, which would enable defendant to construct a satisfactory water system in accordance with said plans and specifications within the funds available to defendant, plaintiffs also to furnish supervision and inspection of construction."

This assignment presents a question of law involving the construction of the contract rather than purely a question of fact.

Both appellants and respondent concede that the proper construction of resolution No. 126, which constituted the

only contract between the parties, is the vital issue in this case. We, therefore, deem it necessary to set it out in full, as follows:

"RESOLUTION No. 126

"WHEREAS, the Council of the Town of Westport, Grays Harbor County, Washington, desires to have assistance in making an application for State funds to supplement any other funds which may now be available and which may hereafter become available for the construction of certain improvements and additions to the town water works system including the completion of the present system, for the purpose of providing an adequate, reliable and satisfactory supply of water for said Town; and

"WHEREAS, it at once becomes necessary for the Town of Westport to secure competent engineering services to make the necessary surveys, to prepare cost estimates, to assist in the preparation of the necessary State applications, in negotiating for matching funds, and after said funds shall have been secured to the extent possible, to prepare the detailed construction plans for the purpose of calling for bids, and to supervise the construction of said water works improvements, additions and completion work; and

"WHEREAS, WILLIS T. BATCHELLER, Consulting Engineer, of Seattle, Washington, has heretofore been consulted and has taken the preliminary steps in advance of preparing said State application and arranging for matching funds from private sources, thereby making it possible to proceed with the least delay for said Town,

"Now, THEREFORE, BE IT RESOLVED by The Council of the Town of Westport, Grays Harbor County, Washington;

"1. That the Council of the Town of Westport does hereby employ said Willis T. Batcheller, Consulting Engineer, to take charge of the engineering work in connection with said water works improvements, additions and completion work as authorized by said Council and as hereafter enumerated.

"2. That said Council hereby authorizes and instructs said Willis T. Batcheller to proceed forthwith with the preparation of the engineering information and investigations required for said State application and negotiations elsewhere, which are thereupon to be submitted to the appropriate State officials, and upon the securing of said funds he shall proceed with the additional work necessary for carrying out said construction work for which finances have been provided.

"3. That said Council hereby stipulates that said water works improvements, additions and completion work shall consist of the following principal items, to-wit:

"(a) A new metal main supply line from the most feasible source selected, preferably running along any existing roads to the extent found feasible and practicable by said Consulting Engineer, to connect with the existing partially completed Town distribution system thru the necessary facilities.

"(b) The necessary diversion dam and control facilities for supplying said pipe line.

"(c) The necessary pumping equipment provided in duplicate for lifting said water into the storage facilities and into said distribution system, it being anticipated that natural head or pressure is likely to be insufficient to do more than deliver the water to the Town under little or no remaining pressure.

"(d) The necessary chlorinating equipment for making the water safe for use, to the satisfaction of the State Department of Health.

"(e) Any necessary additional storage facilities which may be found necessary for the satisfactory operation of the completed system.

"(f) Any necessary materials, equipment and labor for the completion and placing in operation of the partially completed Town distribution system.

"(g) The necessary meters, meter boxes and service connections to serve all existing and prospective domestic and commercial water users.

"(h) Any fire hydrants and fire protection facilities.

"(i) Any other necessary items for making the completed system operative.

"4. That in consideration of the services heretofore rendered and hereafter to be rendered by said Willis T. Batcheller in connection with said water works improvements, additions and completion work, the Town of Westport hereby agrees to pay said firm as follows:

"(a) For the preliminary surveys, securing and preparation of information in connection with said State application for funds and negotiations for matching such funds and for securing any additional funds, the Town of Westport shall pay the sum of Fifteen Hundred Dollars ($1,500.00) upon completion of these services.

"(b) Contingent only upon securing said construction funds for which application and negotiations are hereby

authorized to be made by said Consulting Engineer, and in consideration of the services heretofore rendered and hereafter to be rendered by said Willis T. Batcheller in connection with said project, the Town of Westport hereby agrees to pay said Consulting Engineer a fee in the total amount inclusive of payment provided for preliminary surveys and State application work, of ten (10) per cent of the total cost of acquiring said project.

"5. That said Council hereby authorizes and directs the Town officials, attorney and employees to perform the necessary and appropriate acts for completing and perfecting all applications, negotiations and arrangements for funds and construction contracts, and for the acceptance and legalizing of the same as required by law, and to assist and cooperate with said Consulting Engineer in every way requested by him for the furthering and perfecting of said water works program and its purposes.

"PASSED by the Council of the Town of Westport this 4th day of February, 1946.

"(Signed) J. A. McDonald MAYOR

ATTEST:

"Ell Louise Tilley TOWN CLERK"

It is appellants' contention, as stated in their brief, that after obtaining state and Federal funds:

"Batcheller's commission from the Town was to provide a plan and a system for the construction of a water project which would be adequate to supply the Town's domestic and industrial needs as stipulated in the last paragraph of the Hiring Resolution (Res. 126) and no cost limitation was included in the contract."

In support of their position, appellants rely on the absence of any express provision in the hiring resolution that the plans and specifications be suitable for the construction of a water system within a set limit of funds. In substance, appellants argue that the hiring resolution must be read as any other contract, and that, in the absence of an express limitation on the cost of the proposed water system, none may be implied.

Respondent, on the other hand, argues that appellants were obligated to prepare plans and specifications suitable for the construction of a water system costing no more than $325,000. Its position may be summarized as follows:

Municipal corporations are creatures of statute and have only those powers granted expressly or necessarily implied from express powers, citing *Pacific First Federal Sav. & Loan Ass'n v. Pierce County,* 27 Wn. (2d) 347, 178 P. (2d) 351, and cases referred to therein. Persons who deal with municipal corporations are presumed to have knowledge of the powers of municipal corporations and the authority of their officers, citing *Stoddard v. King County,* 22 Wn. (2d) 868, 158 P. (2d) 78, and *State ex rel. Piper v. Pratt,* 31 Wn. (2d) 725, 198 P. (2d) 814. The employment of appellants by respondent was undertaken with reference to the law in effect at the time of employment, which law became a part of the employment contract, citing *In re Kane,* 181 Wash. 407, 43 P. (2d) 619, and *Dopps v. Alderman,* 12 Wn. (2d) 268, 121 P. (2d) 388.

Appellants do not question the soundness of the principles stated in these cases, but they argue that they have no application because the contract (resolution No. 126) was not one which it was beyond the power of the town to make.

Respondent further contends as follows: By statute, the town was required to submit to the qualified voters a plan and system ordinance providing for the construction of the public utility involved in this case, the ordinance to specify the estimated cost thereof and the manner of payment.

Rem. Supp. 1941, § 9489 [P.P.C. § 416-3], provides:

"Whenever a city council or other corporate authorities of any such city or town shall deem it advisable that the city or town of which they are officers shall purchase, acquire or construct any public utility mentioned in section [9488] hereof or make any additions and betterments thereto or extensions thereof, the common council or other corporate authorities shall provide therefor by ordinance, which shall specify and adopt the system or plan proposed, and declare the estimated cost thereof, as near as may be, and the same shall be submitted for ratification or rejection to the qualified voters of said city at the general or special election, . . ."

The town council, acting pursuant to this statute, prepared and adopted ordinance No. 200, which was duly rati-

fied by the voters of Westport. The ordinance specified and adopted a plan or system for acquiring a complete water distribution system and fixed the estimated cost thereof at $300,000. The ordinance further provided that the cost of the system would be paid in part from the $150,000 grant previously authorized by the Washington State Development Board and the balance from the issuance and sale of water revenue bonds not exceeding the principal amount of $175,000. The ordinance authorized the expenditure of $25,000 more than the estimated cost of construction and acquisition of the system to cover contingencies and bond discount. Concerning this matter, Batcheller testified on cross-examination:

"Q. Did you give Mr. Thompson [Thorgrimson] the figure which was used in this ordinance as the estimated cost of constructing the system? A. I would have to see the ordinance. I gave him an estimate of $325,000.00. Q. You gave him an estimate of $325,000.00? Do you notice the ordinance contains an estimate of $300,000.00, so with a little leeway, so it would go up to $325,000.00, you gave those figures? A. I didn't give $325,000.00. I gave him a revised estimate a year later of $375,000.00. Q. You knew they voted under an ordinance as an estimated cost of $325,000.00 as a maximum? A. *That is true,* and I included, to make it clear to the Court, *I included all items we thought would be needed,* including would be sources of supply. *It would not be necessary to vote this planning system over again.*" (Italics ours.)

It is uncontroverted that the ordinance was prepared by the town's bond attorneys, after consulting with Batcheller, was adopted by the town council on the advice of Batcheller, and that the limitation contained therein relating to the total amount of bonds to be issued ($175,000), was fixed by him.

Respondent argues from these premises that appellant's compensation was contingent upon the completion of a water system within the funds available as authorized by ordinance No. 200 (not exceeding $325,000). Appellants label such a conclusion a *non sequitur* for the reason that respondent's town council could legally pass ordinance after ordinance increasing the estimated cost and authorizing

more revenue bonds until the proceeds thereof were sufficient to defray the actual cost of the project, as shown by the bids received in response to a call for bids based on the plans and specifications finally submitted.

We deem it unnecessary to decide whether such procedure could have been followed by respondent town, because the vital question is whether, under the contract entered into by the parties, respondent town was under any obligation to resort to such a procedure. However, there are two practical possibilities that might be mentioned: First, the voters might not ratify the action of the town council in increasing the amount of bonds; and second, the larger bond issue might be entirely unmarketable.

The object in passing resolution No. 126 was to make it possible for the town to procure an adequate water system within its financial means. Its purpose was not to provide employment for Batcheller without regard to how much the water system might cost the town. The provisions contained in paragraph 5 of the resolution directing the town attorney, its officials and employees to co-operate with Batcheller

" . . . for completing and perfecting all applications, negotiations and arrangements for funds and construction contracts, and for the acceptance and legalizing of the same as required by law, and to assist and cooperate with said Consulting Engineer in every way requested by him for the furthering and perfecting of said water works program and its purposes,"

cannot be reasonably construed to mean that the town council was obligated to keep amending its plan and system ordinance by increasing the bonds authorized to the point where the proceeds would be sufficient to finance the construction according to Batcheller's plans.

If appellants' argument were followed to its logical conclusion, municipal corporations, operating under contracts such as resolution No. 126, could be forced to undertake revenue utility projects far beyond their ability to pay. While no constitutional or statutory debt limitation is involved in this case, the voters in approving ordinance No.

200 set the limit of water revenue bonds which they were willing to have issued at $175,000.

■ It is our opinion that the contract entered into between appellants and respondent must be construed in the light of the applicable statute, and that the result is that appellants were bound to provide plans and specifications suitable for the construction of a system within the estimate made by appellants themselves and incorporated in the ordinance required pursuant to Rem. Supp. 1941, § 9489.

Since Batcheller fixed the limit of the amount of bonds to be issued at $175,000, and the council and the voters acted upon his advice in enacting ordinance No. 200, he is precluded from asserting that the town is obligated to increase that limit, regardless of whether the town could legally do so or whether additional bonds could have been sold.

We do not rest our opinion on the doctrine of *ultra vires*, but on the proposition that the statute (Rem. Supp. 1941, § 9489; Rem. Rev. Stat., § 9490 *et seq.*) requires the passage of an ordinance containing a plan or system, an estimate of cost, and a method of payment; and when that ordinance is passed on the advice of the architect or engineer, specifying the amount of funds to be made available for payment of the project, it becomes part of the contract of employment and fixes the limits within which the architect or engineer must perform. No obligation rests on the municipal corporation to change the plan or system ordinance to comply with shortcomings in his performance, irrespective of whether such change would be *ultra vires* or not.

Having construed the contract of employment, the problem remains as to the validity of the trial court's other findings of fact (Nos. V to IX, inclusive) which relate to appellant's breach.

These findings contain a number of statements of specific failures by appellants to perform certain acts. The substance of the findings is that appellants did not provide suitable plans and specifications for the construction of an adequate water system within the funds available.

■ The rule that the findings of fact of the trial court, made upon conflicting evidence in an action at law, will not

be disturbed unless the evidence clearly preponderates against them, is so well established as to require no citation.

We do not deem it necessary to analyze the testimony relative to each specific statement of the trial court within these findings. To discuss all the testimony relative to these findings would unduly extend this opinion, since the question presented by the assignments of error relating to these findings is whether there is any finding of ·fact, not overcome by a preponderance of the evidence, from which it must be concluded that appellants breached the contract.

In the light of our construction of the contract, the vital finding of fact is No. IX, wherein the trial court found:

"That the system as planned by plaintiffs could not be built within the funds available or within the ability of the defendant Town to finance."

■ Appellants' obligation was to produce plans and specifications for the construction of an adequate water system within the available funds ($325,000). Thus, the ultimate question is whether the evidence clearly preponderates against the trial court's finding that the system as planned by appellants could not be built within the available funds.

There was considerable conflict in the testimony of the various witnesses as to whether appellants' plans and specifications were suitable for the construction of a workable system at any cost. Assuming *arguendo* that they were suitable, nevertheless, the record is replete with uncontroverted testimony that the total of the low bids on the various portions of the project and appellants' own estimated cost of labor on the portion of the work for which no bid was received was far in excess of $325,000.

Bids were called for the entire project, or, in the alternative, for any one or more of thirteen separate contracts making up the entire project.

In its memorandum decision, the trial court said:

"The testimony is however, that there were not 'low bids' on the entire project. In other words, acceptance of the lowest bids submitted would indicate a total cost of $424,095.69. To this figure there are additions to be made

to complete the project, which were called to the Court's attention, including items estimated as follows:

"State sales tax......................$ 12,723.00
"Rights of Way...................... 3,000.00
"Legal Fees ......................... 5,000.00
"Printing and advertising............. 500.00
"Interest during construction.......... 3,750.00
"Bond discount 2%.................. 10,000.00
 "Total: $34,973.00

making a total of $459,068.69. There is yet to be added the fee of the engineer, which as the contract stipulation provided would be a very substantial figure."

The trial court's computations were based on figures testified to by Batcheller and supported by the bids which were introduced in evidence.

It should be pointed out that the item of bond discount (2%) appears to be too low, because the $150,000 four per cent twenty-year water revenue bonds subsequently issued by the town were sold at 8% discount. Therefore, this item computed on the contemplated $175,000 bond issue should have been $14,000 instead of $10,000. Using this figure and adding Batcheller's fee under resolution No. 126 ($42,-409.50) would make the total cost of the project $505,478.19. This computation adequately supports finding of fact No. VI.

Appellants argue that, even if the cost appeared too high after the bids received pursuant to call were examined, the town was not foreclosed from adopting revised plans and seeking new bids. They assert that they made substantial changes in the plans (which respondent emphatically denies) and negotiated with various bidders and, as a result, were able to secure contracts for a complete and suitable project well within the funds available.

Appellants assert that negotiated bids totalling only $289,000 were obtained. Respondent contends that neither it nor appellants had authority to negotiate bids. We deem it unnecessary to decide that question, for the reason that the record does not establish that the cost reached after negotiation with each low bidder was within the available funds.

An examination of the so-called negotiated bids does not support appellants' assertion. The offers received as a result of negotiation do not cover the entire project. Offers as to many items were not included. Some items were bid on separately, whereas the plans and specifications called for bids on all items within each of the thirteen contracts. It is impossible for us to ascertain, by examining the exhibits, the total cost of the project based on appellants' negotiations.

Even if the evidence supported appellants' contention that, after negotiations, the cost was $289,000, it is clear that this figure does not include administrative costs, costs of acquiring a dam site and right of way, bond discount or appellants' fee, the inclusion of which would increase the cost to more than $350,000.

We are unable to find error in the findings of fact.

Respondent makes six assignments of error in support of its cross-appeal from the order dismissing its cross-complaint. Since all these assignments of error relate solely to the question of whether respondent is entitled to recover the sum of $12,750 paid to appellants under the contract, we need not consider each assignment separately.

Respondent advances two arguments: first, that having rightfully rescinded the contract, respondent town is entitled to receive back all money paid to appellants, since appellants' services were valueless; and second, assuming that the services were of some value to respondent, appellants' compensation was fixed by the contract at $1,500.

The trial court, in its finding of fact No. XII, stated:

"That plaintiffs put forth considerable effort in procuring the State grant of $150,000.00 and the $12,750.00 from the Federal Works Agency. That the Court is unable to determine any figure to compensate plaintiffs for such effort and labor less than the full amount of $12,750.00 received by them."

It also appears from the record that respondent (whose water system was subsequently built under another engineer's plans) actually used 61,730 feet of pipe obtained under a contract procured by appellants. It is clear that,

while appellants failed to perform their contract, they did perform valuable services from which respondent obtained substantial benefits.

 Thus, it appears that appellants' services resulted in tangible benefits to respondent, to-wit, the receipt of large state and Federal grants as well as the contract for the pipe used by respondent. Respondent was not entitled to rescind appellants' contract of employment and retain the results of those services without compensation.

Respondent further argues that, if the services were of any value, appellants' compensation was fixed by the contract, which provides:

"4. That in consideration of the services heretofore rendered and hereafter to be rendered by said Willis T. Batcheller in connection with said water works improvements, additions and completion work, the Town of Westport hereby agrees to pay said firm as follows:

"(a) For the preliminary surveys, securing and preparation of information in connection with said State application for funds and negotiations for matching such funds and for securing any additional funds, the Town of Westport shall pay the sum of Fifteen Hundred Dollars ($1,500.00) upon completion of these services."

It was obviously necessary for Batcheller to exert considerable effort in order to *obtain* funds. The quoted clause has reference only to *the application* for funds, *i.e.*, gathering and assembling the necessary information in connection with such applications.

In addition to such services, Batcheller made many trips to Olympia, repeatedly contacted numerous state officials, enlisted the aid of influential private citizens, and vigorously prosecuted the application for state funds to a successful conclusion despite five refusals. These efforts, above and beyond the mere obtaining and preparation of information for the application, were carried on with the town's knowledge, approval, and co-operation. Subparagraph (a), quoted above, does not purport to include these services. Therefore, we cannot accept respondent's contention that the value of appellants' services is limited by the provisions of subparagraph (a).

There being no evidence in the record as to the value of appellants' services, which resulted in the benefits to respondent hereinabove described, we must accept the trial court's finding that the reasonable value of such services was $12,750. Therefore, the trial court was correct in dismissing respondent's cross-complaint.

For the above reasons, the judgment of the trial court must be, and hereby is, in all respects affirmed. No costs will be allowed either party in this court.

SCHWELLENBACH, C. J., BEALS, HILL, and FINLEY, JJ., concur.

October 29, 1951. Petition for rehearing denied.