[No. 910-1. Division One—Panel 1. April 17, 1972.]

THE BANK OF CALIFORNIA, N.A., *as Executor, Respondent,* v. FIRST MORTGAGE COMPANY, *Defendant,* MARY MESSO *et al., Appellants.*

*Williams, Lanza, Kastner & Gibbs* and *William D. Cameron,* for appellants.

*Robert L. Butler* and *Phyllis Cavender,* for respondent.

WILLIAMS, J.—This action involves the determination of the value of the stock of a corporation according to the terms of a buy-out agreement of the stockholders. The cause was tried to the court without a jury, and resulted in findings of fact, conclusions of law and judgment placing a higher value upon the stock than was fixed by a firm of certified public accountants. From this judgment the surviving stockholders appeal.

The facts may be summarized as follows: On February 1, 1964, eight individuals who were employees of, and who owned all of the stock of, First Mortgage Company entered into an "amended agreement among stockholders," whereby the company was given the option to purchase the shares of a stockholder should he die or retire from the company. The agreement specified that the purchase price was to be the book value of each share of stock as shown on the last preceding balance sheet of the company, "adjusted, however, for operations of the Company from the end of this last preceding fiscal year to the date of the event which gave rise to the particular option then involved." The agreement also provided that the balance sheet was to be the one prepared and adjusted by the certified public accountants then serving the company and "[t]he certification of said accounting firm shall be binding upon all of the parties bound by the terms of this agreement. Such determination shall be made in accordance with sound accounting practice . . ."

Maury Setzer, the owner of a majority of the stock, died on June 1, 1969. The Bank of California was confirmed as executor of his will, and the First Mortgage Company timely exercised its option under the agreement to purchase all of his stock. The accounting firm then serving the

company prepared an adjusted balance sheet dated May 31, 1969, the day preceding Mr. Setzer's death. Note 2 of this adjusted balance sheet is as follows:

2. Notes receivable—Collateralized by mortgages:
Included among notes receivable are fourteen completed construction loans on which there were balances due of $198,085.67 at May 31, 1969. Since the interest rates embodied in these notes are lower than the current prevailing rate, the balance sheet reflects an allowance of $27,378.05 for the decline in market value attributable to anticipated discounts upon subsequent disposition.

In note 2 of the balance sheet of October 31, 1968, and in note 2 of the balance sheets of previous years, no allowance was made for the decline in market value of notes receivable due to an increase in prevailing interest rates.

The purpose of the Bank of California in bringing this action was to have a redetermination of the book value of the stock by removing the allowance for the decline in market value of the "Notes receivable—Collateralized by mortgages," the effect of which was to reduce the assets of the company by $27,378.05. It is the bank's contention that the allowance for depreciation made for the first time in the adjusted balance sheet of May 31, 1969, did not represent an operation of the company during the period October 31, 1968, to May 31, 1969, is not within sound accounting practice, and does not conform to the requirements of the agreement. The defendants, who are the owners of all of the outstanding stock of the company other than that owned by Mr. Setzer's estate, contend that the certification of the accounting firm finally settled the value of the stock.

The court found upon substantial evidence that the market value of the notes had diminished as interest rates had risen, and that such decline in value was not attributable to the period October 31, 1968, to June 1, 1969, but rather to the entire time the notes were held. The court therefore concluded that the reduction in the value of the notes in the May 31, 1969, adjusted balance sheet was incorrect.

In the absence of fraud or mistake, a certified

accounting made pursuant to a provision in a valid agreement, such as the one before us, is binding upon all of the parties. *Piedmont Publishing Co. v. Rogers,* 193 Cal. App. 2d 171, 14 Cal. Rptr. 133 (1961). Fraud is not an issue. The question of mistake in the method used in computing the book value is one of law and fact; and in resolving such a question, the court must look to the language of the agreement and the circumstances surrounding its formulation and execution. *S. C. Pohlman Co. v. Easterling,* 211 Cal. App. 2d 466, 27 Cal. Rptr. 450 (1962). The approach to be taken by the court is stated in *Jones v. Harris,* 63 Wn.2d 559, 388 P.2d 539 (1964) at 562:

"Book value" normally means the value of the corporation as shown on the books of account of that corporation, after subtracting liabilities. *Schaffer v. Below,* 278 F. (2d) 619 (3d Cir. 1960). In such cases courts should accept the book accounts, when they are kept in accord with accepted accounting practice and not with an eye to the advantageous exercise of the "buy-out" option. If arbitrary valuations appear in the accounts, the court can then substitute amounts determined through correct accounting procedures. *Aron v. Gillman* (1955), 309 N.Y. 157, 128 N.E. (2d) 284, 51 A.L.R. (2d) 598.

Certainly it was the intention of the parties to the buy-out agreement that the method fixing valuation would be fair and equitable to all. It was unimportant which one of the alternate methods, each of which had support from expert testimony, was used. It was important that the accounting method be uniform. *Piedmont Publishing Co. v. Rogers, supra; Land & Simmons Co. v. Arconti,* 223 Md. 204, 162 A.2d 478 (1960); *Aron v. Gillman,* 309 N.Y. 157, 128 N.E.2d 284, 51 A.L.R.2d 598 (1955). The sudden depreciation of the notes receivable in the adjusted balance sheet of May 31, 1969, following the death of the major stockholder, reflects neither a stable accounting system nor a predictable valuation basis.

■ Appellants also have assigned error to the refusal of the trial court to offset an item which appeared for the first time in the asset column of the May 31, 1969, adjusted

balance sheet. It was: "Overpayment of prior years' Federal income tax $9,480.43." No evidence was introduced concerning the claim of offset. Ordinarily, it is the duty of the court in a law action to make findings of fact upon the material issues tried to the court. *Balzer v. Aukamp,* 166 Wash. 268, 6 P.2d 614 (1932). Where there is no evidence, however, there is nothing upon which the trial judge can act. *J. E. Work, Inc. v. Lovell,* 72 Wn.2d 516, 433 P.2d 896 (1967); *State ex rel. Piper v. Pratt,* 31 Wn.2d 725, 198 P.2d 814 (1948).

The judgment is affirmed.

HOROWITZ, C.J., and CALLOW, J., concur.

Petition for rehearing denied July 5, 1972.

Review denied by Supreme Court August 21, 1972.